CONTINENTAL INSURANCE COMPANIES
and Arthur Stanford, Appellants,

v.

BAYLESS & ROBERTS, INC.,
Appellee.

CONTINENTAL INSURANCE COM-
PANIES, Petitioner,

v.

SUPERIOR COURT, FOURTH JUDICIAL
DISTRICT, Respondent.

Nos. 2426 and 2437.

Supreme Court of Alaska.

March 22, 1976.

Sanford Gibbs, Hagans, Smith & Brown, Anchorage, for appellants and petitioner.

David Shimek, Anchorage, O. Nelson Parrish, James Parrish, Fairbanks, Matthew, Dunn, & Baily, Anchorage, for appellee and respondent.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

### BOOCHEVER, Chief Justice.

Continental has appealed from a superior court order holding it in contempt of court and imposing a fine of $10,000.00. Continental has also filed a petition for writ of prohibition or mandamus vacating or prohibiting the enforcement of the order.

This case presents important issues concerning process requirements relating to contempt procedures and the extent of the superior court's power to punish for contempt.

Bayless & Roberts, Inc. ("B&R") sued Continental Insurance Companies and Arthur Stanford ("Continental") for breach of fiduciary duty. On February 25, 1974, B&R filed a combined request for admissions and interrogatories to Continental. Continental answered the request for admissions on March 28, 1974 and answered the interrogatories on May 6, 1974.

In June, B&R filed a motion for an order compelling responsive answers to 18 of the original 23 interrogatories. Continental did not contest this motion, and an order was entered by the court requiring Continental to answer the interrogatories within ten days. This order was dated August 12, 1974.

On September 25, 1974, B&R moved for a default judgment on the ground that Continental had failed to comply with the August 12 order. At no time during the hearing or in any of the motions was the possibility of a contempt sanction expressly raised.

The court denied the motion for default but held Continental in contempt of court for failure to comply with the court order of August 12, 1974. The court noted that Continental had made no attempt to challenge the order or suggest why the order could not or should not be complied with.

The court based the contempt on two grounds: (1) violation of the court order and (2) contributing to the delay of the discovery process. No findings of fact were made as to Continental's intent in disobeying the court's order; in fact, the circumstances surrounding Continental's failure to respond were not discussed beyond the one statement that Continental had made no attempt to challenge the order or suggest why compliance could not be had.

The court found Continental in contempt and assessed a sanction of $10,000.00 to be paid to the clerk of the court. The court also awarded B&R $500.00 as reasonable expenses and attorney's fees incurred in obtaining the order to compel discovery and the subsequent sanctions.[1] In the same memorandum decision and order, dated January 3, 1975, the court modified the August 12 order to direct Continental to answer nine of the original 23 interrogatories as opposed to the original order involving 18 of the interrogatories. The court gave Continental ten days to answer or suffer a default. Continental answered the interrogatories within the time specified.

Continental appealed the contempt order and, pending this appeal, was granted a stay of the order requiring that it pay $10,000.00 to the clerk of the superior court. Continental also filed a petition for extraordinary relief pursuant to Alaska Rule of Appellate Procedure 25,[2] requesting that the superior court be prohibited from collecting the $10,000.00 and directing the superior court to vacate the January 3, 1975 contempt order.[3]

It is Continental's contention that it was denied procedural due process rights and that the fine of $10,000.00 was in excess of the court's authority. For a better understanding of the background of this case, we have summarized the complicated procedural history in a footnote.[4]

---

1. No appeal has been taken from the portion of the order awarding $500.00 for attorney's fees and expenses.

2. Appellate Rule 25 specifies in part:
 (a) The granting by this court or a justice thereof, on original application, of relief heretofore available by writs authorized by law, is not a matter of right but of sound discretion sparingly exercised.

3. Appellant is before this court on two grounds. The first ground is Appellate Rule 25, which establishes the procedure by which the court exercises its jurisdiction pursuant to AS 22.05.010 (authority to issue "all . . . writs necessary and proper to the exercise of its jurisdiction" including specifically writs of prohibition and mandamus). Appellant is combining two actions, an original application for relief in the action *Continental Insurance Companies and Arthur Stanford v. Superior Court, Fourth Judicial District*, and and an appeal from the case of *Continental Insurance Companies v. Bayless & Roberts*. Jurisdiction is proper in both instances. The original application, although sparingly granted, is allowable because there is no other means by which appellants can join the Superior Court of the Fourth Judicial District. The appeal is proper because it is an appeal from a final judgment of criminal contempt, and thus is an appeal as a matter of right under Alaska Rule of Appellate Procedure 5 pursuant to AS 22.05.010 and 22.05.-020.

4. On August 26, 1974, Continental filed a "Reply to Motion to Compel Answers", which stated that Continental could not answer the requested interrogatories because the questions were unclear, violated the work-product privilege, were irrelevant or were nonsensical. This document refers only to B&R's motion and does not mention the August 12 order. It is not clear whether the reply was written with knowledge of or was directed to the order.

On September 25, 1974, B&R moved for a default judgment on the ground that Continental had failed to comply with the August 12 order. Continental did not respond to this motion, which was originally scheduled to be heard on November 1 but was rescheduled with one day's notice to October 31. In conjunction with this motion, another default motion, which had been filed on September 18 and was thus prior to the default under consideration in this case, and a motion for summary judgment were also to be heard. The September 18 default motion was based on the alleged failure of Continental to make discovery (B&R contended that an agent of Continental had willfully destroyed relevant documents).

At the October 31 hearing, Continental's attorney expressed surprise concerning the September 25 motion for default based on the failure to comply with the August 12 order. Continental's attorney stated that he thought that this motion was merely a refiling of the September 18 default motion. He pointed to the inclusion of the same memorandum of points and authorities supporting both motions as an explanation or reason for the "mistake". He also stated that because of the last minute rescheduling of the hearing, the attorney who usually handled the case was unable to appear, and as a result, he was not able to argue the merits of Continental's position on the September 25 default motion.

## I

At the core of Continental's due process argument is the contention that it received inadequate notice prior to being held in contempt. In order to analyze the requirements for notice properly, it is necessary first to determine whether the alleged contempt may be classified as direct or indirect.[5]

Alaska Rule of Civil Procedure 90(a) and (b) specify:

(a) A contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) For every contempt other than that specified in subdivision (a) of this rule, upon a proper showing on ex parte motion supported by affidavits, the court shall either order the accused party to show cause at some reasonable time, to be therein specified, why he should not be punished for the alleged contempt, or shall issue a bench warrant for the arrest of such party. Such proceeding may be commenced and prosecuted in the same action or in an independent proceeding either by the state, or by the aggrieved party whose right or remedy in an action has been defeated or prejudiced or who has suffered a loss or injury by the act constituting a contempt.

Thus it may not be necessary to furnish any notice for a direct contempt committed in the presence of the court,[6] but a notice and hearing is required for indirect contempts.[7] We confronted a similar problem in *Taylor v. District Court*, 434 P.2d 679 (Alaska 1967). There an attorney was held in contempt of court for failing to appear at the time set for trial in the district court. The court had issued an order to show cause but had not commenced the proceedings by means of an affidavit as required by Rule 90(b).

Justice Dimond, writing for the court, stated:

In order for there to be contempt it must appear that there has been a willful disregard or disobedience of the authority or orders of the court. Whether such willfulness exists is something the court cannot be aware of from its own observations in the courtroom and without inquiry from other sources. Without such inquiry the court cannot ascertain the operational facts from which an inference of willful disobedience or disregard of the court's authority or orders can be drawn. 434 P.2d at 681 (footnotes omitted)

Continental then asked for a continuance, but the court, because of rescheduling difficulties, refused. In arguing the default motion, the only point that Continental's attorney raised was that the "Reply to Motion to Compel Answers" was actually a response to the court's August 12 order and that the failure to respond to the order was either excusable or justifiable for the reasons stated in that reply.

The court took the various motions under advisement. At no time during the hearing or in any of the motions was the possibility of a contempt sanction ever expressly raised.

The court denied the motions for default and the motion for summary judgment but held Continental in contempt of court for failure to comply with the court order of August 12, 1974.

5. *See* Dan B. Dobbs, "Contempt of Court: A Survey", 56 Cornell L.Rev. 183, 244–27 (January 1971).

6. *State v. Browder*, 486 P.2d 925, 938 n. 45 (Alaska 1971). We note, however, that in most cases the court may be required to at least provide a warning before it can properly hold a person in contempt. *See*, for example, *People v. Ellis*, 540 P.2d 1082 (Colo.1975), and *In re Hallinan*, 71 Cal.2d 1179, 81 Cal. Rptr. 1, 459 P.2d 255 (1969).

7. We note, however, that § 7.4 of the American Bar Association Standards Relating to the Function of the Trial Judge provides:
 Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment.

The court went on to hold that to require the judge to prepare and file an affidavit stating that the attorney had failed to appear at the time specified would be pointless and unnecessary for the protection of the rights of the defendant or for the orderly administration of justice.

> The purpose of Civil Rule 90(b) in requiring a motion to be supported by affidavits in indirect contempt proceedings is to afford the one charged with contempt the procedural due process requirement of notice of the charge against him. Appellant was given this notice by the order to show cause. In that order the alleged contemptuous act —the failure to appear as required by court order—was specified. . . . Appellant was fully notified of what he was called upon to defend. 434 P.2d at 681–82 (footnotes omitted)

Under the circumstances involved in *Taylor,* however, where the district court was advised in advance of the attorney's inability to be present because of his participation in a superior court case which lasted longer than anticipated, the district court was ordered to vacate the judgment of contempt.

■ As in *Taylor,* the contempt here must be regarded as indirect. While the failure to comply with the court's order was apparent from the records of the court, it was not possible to ascertain whether that failure was willful [8] without inquiry from sources other than the court's observations. In *Cooke v. United States,*

267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L. Ed. 767, 774 (1925), the United States Supreme Court stated:

> Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. (citations omitted)

Thus prior notice was required both under Civil Rule 90(b) and general due process principles.

B&R did furnish notice that a motion for default was to be heard concerning Continental's failure to comply with the August 12, 1974 order requiring it to answer interrogatories.[9] The notice did not refer specifically to any rule of court, and the memorandum submitted in support of this motion was most confusing. Apparently it was addressed to another motion for default submitted by B&R. Nevertheless, it may fairly be said that Continental was placed on notice that a default was being sought due to Continental's failure to comply with the court's order of August 12, 1974. Alaska Rule of Civil Procedure 37(b) [10] deals with failure to comply with

---

8. The question of whether a showing of willfulness is required in purely civil contempts is not presented in the instant case, since here the contempt is clearly of a criminal nature. *See* discussion, *infra.*

9. The notice was furnished by B&R's motion:
 Comes now the above named plaintiff and moves that the court enter the default of the defendant Continental Insurance Company for failure to comply with that certain order of the court dated August 12th, 1974 which required the defendant to answer Interrogatories of the plaintiff referred to in said order. This motion is based upon the records and files of the above-entitled cause and particularly the memorandum of law

attached hereto and the memorandum of law dated September 12th, 1974.

10. Civil Rule 37(b)(2) states in pertinent part:
 If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
 (A) An order that the matters regarding which the order was made or any other des-

discovery orders. Rule 37(b)(2)(C) provides in part for the entry of default as a possible sanction, and subsection (D) specifies that in lieu of other orders, or in addition thereto, the court may enter an order treating as a contempt of court the failure to obey its orders.

■ The notice received by Continental advised that default was being sought against it for failure to obey the court's order requiring it to answer interrogatories. For B&R to prevail on its motion for default, it was necessary for the court to find not only that Continental had failed *to comply with the court's order* but also that the failure was willful.

■ In *Oaks v. Rojcewicz*, 409 P.2d 839 (Alaska 1966), this court held that before the sanction of preclusion under Civil Rule 37(b)(2) could be imposed, the court must find that the party sanctioned had willfully disobeyed the order of the court compelling discovery:

> [W]e are of the opinion that Civ.R. 37(b)(2)[c] should be construed as authorizing dismissals of claims or proceedings only when it is established that the party's noncompliance with a production order is willful.[11]

Proof that the sanction of preclusion under Rule 37(b)(2) is warranted involves the same elements that would warrant a finding of criminal contempt.[12]

Although Continental was advised of the issues to be considered by the court in adjudging its alleged contempt, it was not specifically advised an adjudication of contempt was being considered. It is true that Rule 37(b)(2)(D) authorizes the court to treat the failure to obey its order as a contempt of court. The notice furnished by B &R, however, not only made no reference to contempt, but also failed to refer specifically to Rule 37. While the memorandum in support of the motion does refer to Rule 37, it makes no mention of the contempt provision.

■■ It may be argued that being advised of the issues determinant of contempt is adequate without specific notice that an adjudication of contempt is being considered. But at least in regard to the punishment to be imposed for contempt, due process requires advance notice specifically referring to contempt[13] so that a party may present his arguments pertaining to that punishment. The specific notice that contempt is to be considered is not a meaningless requirement such as was the "affidavit" under the circumstances of the *Taylor* case. Where the conduct in question does not occur in the presence of the court, a party is entitled to prior notice that contempt is being considered. Mere reference in a memorandum to a rule which, among *numerous other sanctions, refers to con*tempt does not satisfy this requirement.

ignated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to physical or mental examination;
. . . .

11. 409 P.2d at 842–43. *See also Ketchikan Cold Storage Co. v. State*, 491 P.2d 143 (Alaska 1971); *Hart v. Wolff*, 489 P.2d 114 (Alaska 1971); *Bachner v. Pearson*, 432 P.2d 525 (Alaska 1967).

12. *Gwynn v. Gwynn*, 530 P.2d 1311 (Alaska 1975); *Johansen v. State*, 491 P.2d 759 (Alaska 1971); *Taylor v. District Court, supra. See generally* Dobbs, "Contempt of Court: A Survey", *supra* at 261–65.

13. *See Cooke v. United States* quoted *supra*.

We hold that the notice furnished to Continental was inadequate.[14]

## II

Since this matter will have to be remanded to the trial court for such further proceedings as may seem proper, we shall consider other issues raised. It is contended that Continental should be entitled to trial by a different judge from the one before whom the contempt was committed, to trial by jury and to the requirement that its alleged contempt be proved beyond a reasonable doubt.

■ In considering such rights, it is first necessary to categorize the proceedings as to whether they are predominantly of a civil or criminal nature.[15] The history of the power of contempt and the distinction between civil and criminal contempt were extensively reviewed by this court in *Johansen v. State*, 491 P.2d 759 (Alaska 1971). The distinction between criminal and civil contempt is usually phrased in terms of whether the character and purpose of the contempt is "punitive" or "remedial" ("coercive"). The purpose of civil contempt is said to be remedial and for the benefit of the complainant, while the purpose of criminal contempt is to vindicate the authority of the court. The distinction, however, as we noted in *Johansen*, is not sharp, for "[e]lements of punitive as well as remedial punishment are almost invariably present in every civil contempt".[16]

In *Johansen*, because incarceration was the sanction imposed, we were confronted with a situation where the imposition of an arguably civil contempt order for failure to pay child support raised substantial issues of denial of procedural safeguards. We applied a balancing test where the interests of the concerned parties were weighed in order to determine which safeguards were to be appropriately applied.

■ We are not here confronted with the civil-criminal dichotomy problems that were presented in *Johansen*. The contempt order issued by Judge Taylor would clearly be classified as "criminal". The only interested parties in the imposition of the contempt are the court and Continental—B &R has no interest in the outcome of the dispute.[17] The $10,000.00 fine was to be paid directly to the clerk of the court. There was no provision for the compensation of B&R for any loss it may have suffered by the delay in answering the interrogatories. B&R's interest in the answer to its interrogatories was otherwise accommodated by the same order which provided that Continental had ten days to answer the interrogatories or be subject to a default judgment. The fine was not conditioned on any further action by Continental, it was imposed solely for past actions and could not be avoided by any subsequent action on Continental's part. The fine was not "coercive" or "remedial" and was imposed solely to uphold the authority and dignity of the court. Thus, the contempt would traditionally have been classified as criminal.

Since the instant case comes within the criminal contempt classification, Continental is therefore entitled to all procedural safeguards which are consistent with the interests of the court in upholding its efficiency, dignity and authority.

14. The requirement that the notice specifically refer to contempt is embodied in Fed.R.Crim. P. 42(b) which specifies:
. . . [t]he notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged *and describe it as such.* (emphasis added)
*United States v. Mine Workers*, 330 U.S. 258, 297–98, 67 S.Ct. 677, 697–698, 91 L.Ed. 884, 914–15 (1947); *United States v. Hawkins*, 501 F.2d 1029, 1031 (9th Cir. 1974), *cert.*

*denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed. 2d 674 (1974); *United States v. Robinson*, 449 F.2d 925 (9th Cir. 1971); *Skinner v. White*, 505 F.2d 685 (5th Cir. 1974).

15. *See generally* Dobbs, "Contempt of Court: A Survey", *supra* at 235–49.

16. 491 P.2d at 764.

17. *Gwynn v. Gwynn*, 530 P.2d 1311 (Alaska 1975).

### III

Continental argues that it was entitled to be tried before a different judge from the one presiding when the alleged contempt was committed. Under the circumstances here involved, we do not agree.

The considerations which might dictate that a different judge preside at contempt proceedings were first enunciated by the United States Supreme Court in *Cooke v. United States, supra,* 267 U.S. at 539, 45 S.Ct. at 395, 69 L.Ed. at 775, as follows:

> The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court is most important and indispensable. But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward, and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency, but it is not always possible. . . . All we can say upon the whole matter is that where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask

that one of his fellow judges take his place. (citations omitted)

In *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11, 16 (1954), it was held that a judge should not sit in judgment upon misconduct of counsel if the contempt charged is entangled with personal feelings of the judge against the lawyer.[18]

In contrast, the United States Court of Appeals for the First Circuit in *Goldfine v. United States,* 268 F.2d 941 (1959), held that it was not error for a trial judge whose order to produce corporate records had been disobeyed to hear contempt charges arising out of that disobedience. Rule 42(b) of the Federal Rules of Criminal Procedure, involving indirect contempts, requires that a trial judge disqualify himself from hearing a charge of criminal contempt when the contempt charged involved disrespect or criticism of the judge.[19] In *Goldfine,* the court concluded that the contempt did not directly involve the judge personally and that the judge did not commit an abuse of discretion by failing to disqualify himself.

■ The record fails to reveal, and it is not contended that Judge Taylor indicated personal rancor at Continental. The contempt charge did not involve disrespect or criticism directed at the judge. Under these circumstances, there is no reason why the judge who issued the disobeyed order should not be entitled to preside over the contempt proceedings.[20] It would not

---

18. *In Mayberry v. Pennsylvania,* 400 U.S. 455, 463, 91 S.Ct. .499, 504, 27 L.Ed.2d 532, 539 (1971), the Court stated:

> Generalizations are difficult. Instant treatment of contempt where lawyers are involved may greatly prejudice their clients, but it may be the only wise course where others are involved. Moreover, we do not say that the more vicious the attack on the judge, the less qualified he is to act. A judge cannot be driven out of a case. Where, however, he does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseem-

ly conduct have left personal stings to ask "a fellow judge to take his place."
*See also Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

19. *In re Dellinger,* 461 F.2d 389 (7th Cir. 1972); *United States v. Meyer,* 149 U.S.App. D.C. 212, 462 F.2d 827 (1972).

20. Sec. 7.5 of the American Bar Association Standards Relating to the Function of the Trial Judge specifies:

> The judge before whom courtroom misconduct occurs may impose appropriate sanctions, including punishment for contempt, but should refer the matter to an-

be error for Judge Taylor to hear the contempt charge.

## IV

Continental also contends that its right to a jury trial pursuant to this court's holdings in *State v. Browder*, 486 P.2d 925 (Alaska 1971), and *Johansen v. State*, 491 P.2d 759 (Alaska 1971), was denied.[21]

█ *State v. Browder* expanded the holding of *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), wherein the United States Supreme Court held that serious criminal contempts were to be treated like other criminal prosecutions for purposes of right to trial by jury. *Browder* holds that there is a right to trial by jury in all offenses where incarceration is a potential sanction. The holding of *Browder*, however, was expressly limited to those cases where there was the possibility of incarceration:

> Thus, it is possible in the case of minor direct contempts summarily to impose a fine because under AS 09.50.020 incarceration is not a potential sanction for a contempt within AS 09.50.010(9) . . . .
> 486 P.2d at 938, n. 45.

Continental, as a corporation, cannot be incarcerated. Although specific officers or agents can be incarcerated if it is determined that the contemptuous acts were done on their authority or responsibility, here no specific individual was before the court nor was any notice given to any particular individual that his acts were to be reviewed. Since there is no possibility of incarceration under the facts of this case, Continental has no right to a jury trial.[22]

## V

█ When a criminal contempt is involved, all elements of the offense, including that of willfulness, must be proven beyond a reasonable doubt.[23] Here, we have no indication that the trial court found that the failure to comply with the terms of the order of August 12, 1974 was intentional. An intentional or willful failure to comply with an order occurs when such failure is not due to inability, but to purposefulness, bad faith or fault of petitioner [24] as distinguished from accidental, inadvertent or negligent conduct.[25] If it is proved that a party had notice of the court's order and was aware of the requirements but failed to comply with the order, in the absence of explanation of the reason for such failure, a court could infer it to be intentional.[26]

other judge if his conduct was so integrated with the contempt that he contributed to it or was otherwise involved, or his objectivity can reasonably be questioned.
But, when necessary, disrespectful or obstreperous conduct interfering with a trial may be handled by the judge against whom the conduct is directed. Standard 7.1 states:
The court has the inherent power to punish any contempt in order to protect the rights of the public by assuring that the administration of criminal justice shall not be thwarted. The trial judge has the power to cite and, if necessary, punish summarily anyone who, in his presence in open court, willfully obstructs the course of criminal proceedings.

21. AS 09.50.030 provides for jury trials in cases of indirect contempt "where the act or thing so charged as a contempt is of such nature as to constitute also a criminal offense under a statute of the United States or a law of this state. . . . " Here the failure to answer interrogatories does not fall under that category.

22. We do not consider the question of whether the size of the fine might justify a jury trial since, for the reasons stated below, we conclude that the $10,000.00 fine was beyond the court's authority.

23. *In re Joyce*, 506 F.2d 373 (5th Cir. 1975) ; *In re Brown*, 147 U.S.App.D.C. 156, 454 F.2d 999 (1971) ; *Hawaii Public Employment Relations Board v. Hawaii State Teachers Ass'n*, 520 P.2d 422 (Hawaii 1974). .

24. *United States v. Fidanian*, 465 F.2d 755, 760 (5th Cir. 1972).

25. *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) ; *Oaks v. Rojcewicz*, 409 P.2d 839, 843 (Alaska 1966).

26. *United States v. Fleischman*, 339 U.S. 349, 360-63, 70 S.Ct. 739, 746, 94 L.Ed. 906, 913-15 (1950) ; *United States v. DeSimone*, 267 F.2d 741, 745 (2nd Cir. 1959).

The trial court denied the motion for default and imposed the contempt sanction. The court made no findings of fact as to the intent of Continental in failing to respond to the order, and we have no way of knowing whether the court considered such an issue, and if so, what standard of proof was applied. Upon remand, it must be proven beyond a reasonable doubt[27] that those acting on behalf of Continental intentionally violated the court's order.[28]

## VI

Continental also challenges the authority of the court to impose a $10,000.00 fine for contempt. AS 09.50.010(5) provides that disobedience of a lawful order of the court constitutes contempt of the authority of the court. The maximum penalty for contempt is the subject of AS 09.50.020:

> A person who is guilty of contempt is punishable by fine of not more than $300 or by imprisonment for not more than six months. However, when the contempt is one mentioned in § 10(3)–(12) of this chapter, or in an action before a magistrate, the person is punishable by a fine of not more than $100 unless it appears that a right or remedy of a party to an action or proceeding was defeated or prejudiced by the contempt, in which case the penalty shall be as prescribed for contempts described in § 10(1) and (2) of this chapter.

Appellant contends that since the court's contempt order was based on disobedience to a lawful order of the court, it falls within § 10(5) and is subject to a maximum fine of $100.00. If, however, the contempt, in this case the failure to respond to opponent's interrogatories, prejudiced the right of the opposing party, the maximum penalty is a fine of $300.00 and incarceration for a period not to exceed six months.

There was no showing that the failure to comply with the court's order defeated or prejudiced the rights of B&R, and in any event, Continental, as a corporation, was not subject to imprisonment, so that if a suitable showing of prejudice to the rights of B&R is made, the maximum sanction authorized by the statute would be $300.00.

While it is clear that the court imposed a fine far in excess of that authorized by statute, a question remains as to whether the superior court's powers are limited by that statute.

The contempt power has been consistently recognized by American courts to be an inherent power of the judiciary.[29] The foundation for such power was derived originally from the English courts' peculiar position as adjuncts to the king

---

27. *But see Johansen v. State*, 491 P.2d 759, 767, where we placed the burden on the defendant to prove by a preponderance of the evidence inability to meet support payments ordered by the court.

28. Although Continental is a corporation, it may be chargeable with conduct involving willfulness through the conduct of its agents or employees. *United States v. Carter*, 311 F.2d 934, 941–42 (6th Cir. 1963), *cert. denied, Felice v. United States*, 373 U.S. 915, 83 S.Ct. 1301, 10 L.Ed.2d 415, *reh. denied*, 373 U.S. 954, 83 S.Ct. 1677, 10 L.Ed.2d 708; *Continental Baking Co. v. United States*, 281 F.2d 137, 149–50 (6th Cir. 1960); *Boise Dodge, Inc. v. United States*, 406 F.2d 771 (9th Cir. 1969).

29. *See, e. g., Fisher v. Pace*, 336 U.S. 155, 159–60, 69 S.Ct. 425, 427–428, 93 L.Ed. 569, 573 (1949), *reh. denied*, 336 U.S. 928, 69 S.Ct. 653, 93 L.Ed. 1089 (1949), and cases cited therein at n. 2 & 3. *See also* In the *Matter of L. A. M. v. State*, 547 P.2d 827, (Alaska, 1976); *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627 (1966); *United States v. United Mine Workers*, 330 U.S. 258, 330–32, 67 S.Ct. 677, 713–715, 91 L.Ed. 884, 932 (1947) (concurring and dissenting opinion of Justices Douglas and Black); *Michaelson v. United States*, 266 U.S. 42, 65–66, 45 S.Ct. 18, 19–20, 69 L.Ed. 162, 167 (1924); *Ex Parte Robinson*, 19 Wall. 505, 22 L.Ed. 205, 207–08 (1874); *Yates v. United States*, 227 F.2d 844, 845 (9th Cir. 1945); *Raiden v. Superior Court*, 34 Cal.2d 83, 206 P.2d 1081, 1082 (1949); and Frankfurter & Landis, "Power to Regulate Contempts", 37 Harv.L. Rev. 1010 (1924).

and administrators of his will.[30] Gradually, the basis of the contempt power shifted *from a power of courts as instruments of* *the king to one inherent in the courts themselves.*[31] Because of a confused historical background,[32] the extent of and limitations on this inherent power have not been precisely defined. Illustrative is the power to imprison a defendant summarily for a direct contempt. Initially, it was assumed that the court's powers were unfettered by a right to jury trial.[33] In *Bloom* *v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), it was held that, under the facts of that case, the power to imprison a defendant summarily for direct contempt was not absolutely necessary to preserve the court's dignity, decorum and efficiency.[34] *We conclude that the inherent power of the court to punish for contempt, whether direct or indirect, is limited to those situations when it is necessary to preserve the dignity, decorum and efficiency of the court.*

In addition to that limitation, there is a further question as to the authority of the legislature to limit the court's contempt power. Few courts have dealt with this question; most cases treat statutory enactments concerning contempt and the sanctions specified therein as being the applicable law.[35]

30. R. Goldfarb, The Contempt Power, 14 (1963). Apparently, contempt was extant in England as far back as the 10th Century.

31. *Id.* at 13.

32. *Id.*, Ch. 1, "History of the Contempt Power".

33. We have seen that it is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempt committed in the face of the court, . . . the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to the unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them.

*Ex parte Terry,* 128 U.S. 289, 313, 9 S.Ct. 77, 83 32 L.Ed. 405, 412 (1888). *See also* *Cooke v. United States, supra*; *Ex parte* *Hudgings,* 249 U.S. 378, 382–83, 39 S.Ct. 337, 339, 63 L.Ed. 656, 658 (1918) ; *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 449–51, 31 S.Ct. 492, 501–502, 55 L.Ed. 797, 809 (1911).

34. In *Bloom v. Illinois, supra,* 391 U.S. at 208, 88 S.Ct. at 1486, 20 L.Ed.2d at 532, the Court states:

As we read the earlier cases in this Court upholding the power to try contempts without a jury, it was not doubted that the summary power was subject to abuse or that the right to jury trial would be an effective check. Rather, it seems to have been thought that summary power was necessary to preserve the dignity, independence, and effectiveness of the judicial process—"To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half of its efficiency." *In* *re Debs,* 158 U.S. 564, 595, 15 S.Ct. 900, 910, 39 L.Ed. 1092, 1106 (1895). It is at this point that we do not agree : in our judgment, when serious punishment for contempt is contemplated, rejecting a demand for jury trial cannot be squared with the Constitution or justified by considerations of efficiency or the desirability of vindicating the authority of the court.

Although the Court in *Bloom* did not specifically discuss the inherent contempt powers as such, the earlier cases which upheld non jury summary contempt proceedings rely primarily on the inherent power rationale. *See e.* *g., Fisher v. Pace,* 336 U.S. 155, 159–60, 69 S.Ct. 425, 427–428, 93 L.Ed. 569, 573 (1948), wherein the Court stated :

Historically and rationally the inherent power of courts to punish contempts in the face of the court without further proof of facts and without aid of jury is not open to question. This attribute of courts is essential to preserve their authority and to prevent the administration of justice from falling into disrepute. Such summary conviction and punishment accords due process of law.

35. *See, e. g., State v. Browder,* 486 P.2d 925, n. 45 at 938 (Alaska 1971). There the court treated AS 09.50.020 as the relevant law for determining what was the potential sanction

It is clear that in the federal system, the United States Congress has the right and power to regulate the use of the contempt sanction within the federal district courts and courts of appeal.[36] But the source of this power is not a basic right of the legislature to regulate a court's contempt power. Congress' authority derives from its nature as the creating agency for the federal district courts and courts of appeal. This proposition was first expressed in *Ex parte Robinson,* 19 Wall. 505, 22 L.Ed. 205, 208 (1874), wherein the Court stated:

> [W]hether it [the statute in question] can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution may, perhaps, be a matter of doubt, but that it applies to the circuit and district courts there can be no question. These courts were created by Act of Congress. Their powers and duties depend upon the Act calling them into existence, or subsequent Acts extending or limiting their jurisdiction.[37]

■■■■ Perhaps the most inclusive discussion of the inherent nature of the court's contempt power and its relationship to legislative enactments is set forth in an 1893 opinion of the California Supreme Court, *In re Shortridge,* 99 Cal. 526, 34 P. 227 (1893). The case points out that the inherent power to punish for contempt exists independently of statute and holds that the legislature may regulate the procedure and enlarge the power, but it cannot "without trenching upon the constitutional powers of the court, and destroying the autonomy of that system of checks and balances which is one of the chief features of our triple-department form of government, fetter the power itself".[38] We agree with the California court that enactments endeavoring to restrict the court's contempt powers are entitled to respect as an opinion of a coordinate branch of the government but are not binding on the court.[39] An exception to this rule pertains to courts created by legislative enactment. There the legislature does have the power to limit the court's exercise of contempt procedures. In Alaska, unlike the federal system applicable to United States District Courts and Courts of Appeal, the supreme and superior courts were created by the Alaska State Constitution and not by legislative enactment.[40] Thus, statutory enactments

for a contempt conviction. *See also Jefferson v. City of Anchorage,* 374 P.2d 241 (Alaska 1962).

36. *Michaelson v. United States ex rel. C., St. P., M. & O. R. Co.,* 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162 (1924).

37. *See also Bessette v. W. B. Conkey Co.,* 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904) ; *Michaelson v. United States ex rel. C., St. P., M. & O.R. Co., supra.*

38. 34 P. at 229.

39. *In re Shortridge,* 34 P. at 229, referring to *State v. Morrill,* 16 Ark. 384. It is to be noted, however, that since, in California, the constitution gives the legislature the basic power to regulate the procedures and practices in the court system, reasonable legislation of the contempt power is "valid and binding" in that state. California Constitution, art. VI, § 6 ; *In re McKinney,* 70 Cal. 2d 8, 73 Cal.Rptr. 580, 447 P.2d 972 (1968) ; *Ex parte Garner,* 179 Cal. 409, 177 P. 162 (1918). *Cf. Lane v. Superior Court,* 104 Cal.App. 340, 285 P. 860 (1930) ; *Brydonjack v. State Bar of California,* 208 Cal. 439, 281 P. 1018 (1929). "To do [otherwise] . . . would be tantamount to a denial of legislative power to regulate the practice and procedure by which our courts are governed, . . . ." *In re McKinney, supra,* 447 P.2d at 974–75, quoting from *Ex parte Garner, supra,* 177 P. at 164.
But even where the constitution gives the legislature the power to regulate the courts' practices, the legislature still cannot impose limitations or regulations which impair the court in vindicating its authority or maintaining respect and efficiency. *In re McKinney, supra,* 477 P.2d at 974–75. In Alaska, unlike California, the constitution gives the court the basic power to regulate its practices and procedures. Alaska Constitution, art. IV, § 15.

40. Art. IV, § 1 of the Alaska Constitution states :
> The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature.
*Compare* art. III, § 1 of the United States Constitution.

which endeavor to limit the necessary contempt powers of the Alaska superior and supreme courts are not binding. Nevertheless, statutory enactments, which reasonably regulate the contempt power, as representing the opinion of a coequal branch of the government, should be given effect as a matter of comity unless they fetter the efficient operation of the courts or impair their ability to uphold their dignity and authority.

We now must apply these principles to the facts of the present case. We are concerned with sanctions imposed by a trial court for failure to comply with a discovery order. Before disposing of this issue, we believe that it is incumbent upon us to comment on the manner that our discovery rules are misused in some cases. We do not imply that the following remarks apply to the facts in this case, the counsel here involved, or for that matter the vast majority of counsel practicing in Alaska. Nevertheless, in some cases coming to our attention, we find that discovery rules have been misused.

Discovery procedures were intended to eliminate opportunities for trickery and surprise. Unfortunately, in the hands of some attorneys, these procedures, which should be utilized to simplify trials, are made the instruments of prolonged legal harangues, both written and oral. Unduly detailed and time consuming requests and interrogatories coupled with deliberately obfuscating and evasive answers exacerbate the situation. Most of the time-consuming problems would be eliminated if counsel would confer in good faith and secure clarification of questions or demands so that they may be answered and complied with in candor. Counsel do a disservice to the court and to their clients by failing to approach discovery in a mutually commonsense manner seeking to accomplish the results intended by the rules. We have been under the illusion that the era of pettifoggery so aptly depicted by Dickens was long gone, but some of the cases coming to our attention reveal a renaissance. We are deeply cognizant of the problems confronting the trial bench when presented with attorneys who, on the one hand, seek to take advantage of all technicalities, and, on the other, cavalierly disregard orders of the court and the requirements of our rules. We recognize that the trial bench must have suitable powers to deal with such recalcitrance. Remedies are afforded under the applicable rules and statutes. But if those provisions are inadequate, we shall not hesitate to approve suitable remedies drawn from the reservoir of the court's inherent power. That inherent power, however, must be exercised sparingly, and then only when it is necessary to preserve the dignity, authority and efficiency of the court so that parties are assured of fair and effective resolution of their disputes.

 Here the court, in addition to imposing the heavy fine for contempt, awarded costs and expenses to the opposing party and further ordered Continental to answer certain interrogatories within ten days or suffer default. The interrogatories were answered within the time required, and there was no necessity for the court to invoke its inherent powers. Under these circumstances, we hold that the trial court should give comity to the legislative enactments and limit its power to the remedies specified therein.

The judgment of contempt is reversed, and the superior court is ordered to vacate the January 3, 1975 contempt order. The case is remanded for such further proceedings as the court may deem suitable in light of this opinion.

REVERSED AND REMANDED.

The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish.