Mark A. WEAVER, Appellant,

v.

The SUPERIOR COURT OF the State of
Alaska, THIRD JUDICIAL
DISTRICT, Appellee.

No. 2873.

Supreme Court of Alaska.

Dec. 16, 1977.

Barbara J. Miracle and John M. Murtagh, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

Warren G. Kellicut, Peterson, Melaney & Kellicut, Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR and BURKE, Justices, and DIMOND, Justice Pro Tem.

## OPINION

BURKE, Justice.

In this appeal, attorney Mark Weaver challenges a contempt citation and fine imposed upon him by Superior Court Judge C. J. Occhipinti. Weaver, an assistant public defender, was assigned in October, 1975, to represent Jean Fox,[1] who had been indicted for the crime of shooting with intent to kill, wound, or maim. On the morning of December 16, 1975, the day scheduled for trial in the Fox matter, a panel of prospective jurors was assembled and counsel for both sides began their voir dire examination.

Judge Occhipinti allowed counsel somewhat over two hours in which to complete their individual questioning of the prospective jurors. After that period of time had elapsed, he took over the questioning requiring the attorneys thereafter to submit

---

1. *State of Alaska v. Jean Dianne Fox*, No. 75–6883 Cr.

any proposed questions to him.[2] Weaver objected to the judge's curtailment of the attorneys' individual questioning of the prospective jurors and further argued that he needed additional time to prepare questions for submission to the trial court. The court overruled Weaver's objections and resumed its questioning of prospective jurors.

After Judge Occhipinti finished questioning one member of the jury panel, he allowed Weaver to follow up with some questions of his own. When the judge cut off that line of questioning, appellant again objected to the sufficiency of the voir dire examination. Weaver then moved for a mistrial on the grounds that the trial court had given the jury the impression that Weaver was trying to delay the proceedings and that the voir dire questioning was not probative. Judge Occhipinti granted the motion for mistrial and then imposed a $100 fine on appellant for contemptuous conduct.[3] The trial court further suspended Weaver from practice before any trial court in the Third Judicial District until the fine had been paid or an appeal perfected. Weaver challenges the trial court's imposition of contempt sanctions and contends that the superior court exceeded its authority in suspending him from practice before the trial courts.

## I. THE TRIAL COURT'S FAILURE TO MAKE FINDINGS OF FACT

Appellant first contends that the trial court's failure to recite the facts which formed the basis of the contempt citation constitutes reversible error. Rule 90(a), Alaska Rules of Civil Procedure, requires the trial court to make findings of fact in cases where a direct contempt, committed in the presence of the court, is punished summarily. Rule 90(a) provides:

> *Contempt in Presence of Court.* A contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. *The order of contempt shall recite the facts and shall be signed by the judge and entered of record.* (emphasis added).

The appellee trial court admits that no specific findings of fact were made but argues that the Rule 90(a) requirement should not be mandatory where the record clearly discloses the facts and reflects the conduct of the parties. Acknowledging that the purpose of a requirement of findings of fact is to provide a basis for appellate review, the trial court contends that the record sufficiently establishes the factual background of the contempt for the purposes of this court. However, it is unclear from the transcript which of appellant's remarks were considered contemptuous, and neither the judge's remarks at the time the citation was given[4] nor the contempt order itself[5] gives a clue as to the basis of the citation.

2. This method of examining prospective jurors is expressly provided for by Rule 24(a), Alaska R.Crim.P.:

> The court may permit the defendant or his attorney and the prosecuting attorney to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the prosecuting attorney to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

3. We question whether a mistrial was justified under these circumstances. In our view it was not.

4. The only statement by the trial court which alludes to the basis of the contempt was made at the hearing on appellant's motions held two days after issuance of the citation.

> THE COURT: . . . I don't know where you've practiced or how long you've practiced, so I try to be a little tolerant—but you initially began, in my opinion to harass the court by moving that the defense table be moved to the other side. As I say, I don't know where the hell you started, but—that commenced it.

5. The Order of Contempt states:

> IT IS HEREBY ORDERED THAT Mark Weaver, Assistant Public Defender be and hereby is fined One Hundred dollars ($100.00);
>
> IT IS FURTHER ORDERED THAT Mark Weaver having been found in contempt of this Court is hereby prohibited from practicing before the Trial Courts for the Third Judi-

The trial court also relies on this court's decision in *Taylor v. District Court for the Fourth Jud. Dist.*, 434 P.2d 679 (Alaska 1967), to support its contention that failure to comply with Rule 90 requirements should not warrant reversal of the contempt. In *Taylor*, the trial court failed to file an affidavit in accordance with Rule 90(b).[6] We held that defect not to be fatal, since the purpose of the affidavit requirement was to give notice and that purpose had already been fulfilled by the court's order to show cause. The purpose of Rule 90(a)'s requirement that the judge recite the facts upon which the contempt citation is based is to aid this court's review of the record, as well as apprise the contemnor of the conduct for which he is being sanctioned. Neither of these purposes has been fulfilled, and thus our reasoning in *Taylor* is inapplicable to the instant case. The trial court's failure to make findings of fact, therefore, requires reversal of the contempt sanction imposed by Judge Occhipinti or a remand for the purpose of entering such findings.

## II. DUE PROCESS

■ Appellant also contends that the trial court deprived him of his right to due process, basing this argument on four separate grounds. Before we can consider appellant's due process claims, however, we must first decide whether the proceedings in this case were criminal or civil in nature, since in the case of a criminal contempt, the contemnor is "entitled to all procedural safeguards which are consistent with the interests of the court in upholding its efficiency, dignity and authority." *Continental Insurance Cos. v. Bayless & Roberts, Inc.*, 548 P.2d 398, 405 (Alaska 1976). Despite the trial court's argument to the contrary, the contempt sanction imposed on appellant was clearly criminal in nature, since the

$100 fine was imposed for past actions, was not conditioned on any further action by appellant and could not be avoided by any subsequent action on Weaver's part. *Id.* Although the trial court's suspension of appellant from practice was conditioned on payment of his fine or perfection of an appeal, that suspension appears not to have itself been a sanction for the direct contempt, but rather a method of enforcing quick payment of the $100 fine which was the sanction. Since the fine was not "coercive" or "remedial," this contempt must be classified as criminal, its sole purpose appearing to have been to uphold the dignity and authority of the court. *Id.* Since the contempt was criminal, appellant was entitled to certain procedural safeguards.

### a. Right to Warning

■ Appellant first claims that the trial court's failure to give him a warning before finding him in contempt was violative of his right to due process. The trial court concedes that no specific warning was issued but argues that such a warning is not necessary. In *Continental Insurance Cos. v. Bayless & Roberts, Inc.*, supra, we stated that "in most cases the court may be required to at least provide a warning before it can properly hold a person in contempt." (citations omitted). 548 P.2d at 402 n. 6. We cited in support of this proposition *People v. Ellis*, 540 P.2d 1082 (Colo.1974), in which the court partially based its reversal of a contempt on the trial court's failure to give any warning. The *Ellis* court looked to the language of Justice Powell's concurring opinion in *Eaton v. City of Tulsa*, 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974), in which he stated:

I place a high premium on the importance of maintaining civility and good order in the courtroom. But before there is resort

---

cial District, until such time. as the fine has been paid or appeal has been made to the Supreme Court.

**6.** Rule 90(b), Alaska Rules of Civil Procedure provides in pertinent part:

*Other Contempts—Proceedings—Parties.* For every·contempt other than that specified in subdivision (a) of this rule, upon a proper

showing on ex parte motion supported by affidavits, the court shall either order the accused party to show cause at some reasonable time, to be therein specified, why he should not be punished for the alleged contempt, or shall issue a bench warrant for the arrest of such party.

to the summary remedy of criminal contempt, the court at least owes the party concerned some sort of notice or warning. 415 U.S. at 700, 94 S.Ct. at 1231.

Appellee argues that the *Ellis* and *Eaton* cases are distinguishable from the case before us now, since they both condemn the trial court's failure to issue warnings to non-attorneys, who might not otherwise know that their conduct could constitute a contempt. The ABA Standards Relating to the Function of the Trial Judge, § 7.2, lend support to the trial court's position that a warning may not be necessary if the contemnor knew or should have known that his conduct was contemptuous.

§ 7.2 Admonition and Warning

No sanction other than censure should be imposed by the trial judge unless:

(i) it is clear from the identity of the offender and the character of his acts that disruptive conduct was willfully contemptuous, or

(ii) the conduct warranting the sanction was preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition.

However, the commentary to this standard does not suggest that warnings need be issued only to laymen; it reasons that a warning is desirable before punishing all but "flagrant" contempts, since (1) it may prevent further disorder; (2) it assures the court that the subsequent conduct will be willfully contemptuous and deserving of punishment; and (3) it reduces the risk that attorneys will be deterred by fear of punishment from exercising zealous advocacy. In this case the conduct of appellant was certainly not flagrantly contemptuous, and thus he was entitled to a warning that his behavior could constitute the basis for imposition of contempt sanctions. Such a procedural safeguard is particularly necessary in a case such as this one, in which an attorney's conduct may tread the borderline between zealous advocacy and contempt.

### b. Notice and Hearing

Appellant next contends that he should have been afforded notice and a formal hearing in which he would have the opportunity to refute the trial court's allegations of contempt. We have previously held that such notice and hearing may not be necessary in cases where the contempt was a direct one, committed in the presence of the court.[7]

Thus it may not be necessary to furnish any notice for a direct contempt committed in the presence of the court, but a notice and hearing is required for indirect contempts. (footnotes omitted).

*Continental Insurance Cos. v. Bayless & Roberts, Inc.*, 548 P.2d at 402. The rationale for this distinction between direct and indirect contempts is that in the case of a contempt committed in the midst of the proceedings, the trial court may need to punish summarily in order to uphold its dignity and authority. However, that rationale is not applicable to contempt sanctions which are imposed after a proceeding is over.

This distinction between summary punishment imposed during a proceeding to maintain order and sentencing which occurs after the termination of a proceeding was recognized by the United States Supreme Court in *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). In that case, a Kentucky trial court judge summarily sentenced defense attorney Taylor on nine counts of contempt after the conclusion of trial. Although numerous warnings that Taylor's conduct constituted contempt were given throughout the trial, the judge would not allow Taylor to respond in his own defense when he imposed the sentences after trial. Citing its earlier decision in *Groppi v. Leslie*, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972), as well as § 7.4 of the

---

**7.** Alaska R.Civ.P. 90(a) provides:

A contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

ABA Standards Relating to the Function of the Trial Judge,[8] the court stated:

> [W]here conviction and punishment are delayed, 'it is much more difficult to argue that action without notice or hearing of any kind is necessary to preserve order and enable [the court] to proceed with its business.'
>
> \*  \*  \*  \*  \*  \*
>
> [B]efore an attorney is finally adjudicated in contempt and sentenced after trial for conduct during trial, he should have reasonable notice of the specific charges and opportunity to be heard in his own behalf. (Citations omitted).

418 U.S. at 498, 94 S.Ct. at 2703. The court went on to qualify this notice and hearing requirement, stating that a full scale trial would not necessarily be appropriate since the judge would have witnessed the events and the reporter's transcript would be available. Holding in *Taylor v. Hayes* that minimum requirements of due process had not been extended to petitioner, the court set aside the contempt on the ground that notice and hearing were not provided.

In the case before us now, the trial court convicted and sentenced appellant for contempt after it had granted a mistrial and the panel of prospective jurors had been dismissed. Since, as in *Taylor v. Hayes*, the sentence was imposed after the proceeding, the rationale for summary punishment did not exist and notice and hearing on the charges should have been granted.[9]

#### c. New Judge

▮▮▮ In his third due process claim, appellant challenges Judge Occhipinti's impartiality in convicting and sentencing him for contempt and claims that the judge should have disqualified himself on this issue. In *Continental Insurance, Cos., supra,*

at 406, we held that where the trial court indicated no personal rancor toward the attorney there is no reason for the trial court to disqualify itself. The contemnor's conduct need not be directly disrespectful towards or critical of the judge to cause the type of rancor which warrants disqualification, since "contemptuous conduct, though short of personal attack, may still provoke a trial judge and so embroil him in controversy," that he cannot be impartial. *Taylor v. Hayes, supra* at 501, 94 S.Ct. at 2704. In *Taylor* the court further held that the test for whether a new judge is needed is not only actual bias but " 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused.' " 418 U.S. at 501, 94 S.Ct. at 2704. The Supreme Court found that since the record reflected a running controversy between the attorney and Judge Hayes in which the judge displayed an increasingly unfavorable personal attitude toward Taylor, the contempt issue should have been adjudicated by another judge.

Appellant argues that the transcript reflects a running controversy and points to the following remarks:

> THE COURT: (At the time of appellant's first objection to the court's voir dire) Now I don't wish to reflect on your experience or lack of it, or your perceptivity or lack of it, but you have asked more questions of the same juror, who has answered the same thing—I think it's almost insulting to a juror.
>
> \*  \*  \*  \*  \*  \*
>
> THE COURT: (At the final hearing on appellant's motions) [Y]ou initially began,

---

**8.** Section 7.4 of the ABA's Standards Relating to the Function of the Trial Judge provides:

Notice of charges and opportunity to be heard.

Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment.

**9.** In a case such as this, no extended notice would be required as long as the court adequately advised counsel of the basis for possibly holding him in contempt and afforded an adequate opportunity for counsel to be heard. The notice should specify the particular actions or omissions which constitute contempt under AS 09.50.010.

in my opinion, to harrass the court by moving that the defense table be moved to the other side. As I say, I don't know where the hell you started, but—that commenced it.

We do not find these remarks to be indicative of the degree of personal rancor necessary to warrant a judge's disqualification from hearing a contempt.

### d. Jury Trial

■ Appellant claims that he should have been afforded the right to a jury trial. Ordinarily the contemnor is entitled to a jury trial only when incarceration is a possible sanction for his misbehavior. *Continental Insurance, Cos.*, 548 P.2d at 407; *State v. Browder*, 486 P.2d 925 (Alaska 1971).[10] Of the twelve different acts or omissions which constitute contempt under AS 09.50.-010,[11] only two are punishable by imprisonment.[12] However, due to the trial court's failure to indicate the factual basis of appellant's contempt, it is impossible for us to determine whether appellant's allegedly contemptuous conduct falls within sections (1) or (2) of the statute which are punishable by imprisonment or sections (5) or (9) which are not and thus whether a jury trial was required in this case.

### III. SUPERIOR COURT'S AUTHORITY TO SUSPEND APPELLANT FROM PRACTICE

■ Appellant contends that the trial court exceeded its authority in suspending him from practice before the trial courts in the Third Judicial District as a means of enforcing payment of the $100 sanction. Appellant argues that the supervision and discipline of attorneys is the exclusive province of the Supreme Court of Alaska and cites Alaska Bar Rule 9 in support of this contention. Rule 9 provides in part:

> Any attorney admitted to practice law in this State or any attorney allowed to appear and participate by a court of this State for a particular proceeding *is subject to the supervision of the Supreme Court of Alaska* (hereinafter called "the Court") and the Disciplinary Board hereinafter established. (emphasis added).

Rule 9 further provides that the Supreme Court's disciplinary powers should not be construed

> to deny to any other court such powers *as are necessary for that court to maintain control and supervision over proceedings conducted before it,* such as the power of contempt. (emphasis added).

We are not persuaded that the superior court needs the power of suspension in or-

**10.** While this is the rule in Alaska, we note that a different standard has been articulated by the United States Supreme Court. As stated by the Court in *Taylor v. Hayes, supra*:

> [O]ur cases hold that petty contempt like other petty criminal offenses may be tried without a jury and that contempt of court is a petty offense when the penalty actually imposed does not exceed six months or a longer penalty has not been expressly authorized by statute. 418 U.S. at 495, 94 S.Ct. at 2701, 41 L.Ed.2d at 905–06.

**11.** The only provisions of AS 09.50.010 which could possibly have been applicable to appellant's conduct are as follows:

> The following acts or omissions in respect to a court of justice or court proceedings are contempts of the authority of the court:
> (1) disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to impair its authority or to interrupt the course of a trial or other judicial proceeding;

> (2) a breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the course of a trial or other judicial proceeding;
>
> \* \* \* \* \* \*
> (5) disobedience of a lawful judgment, order, or process of the court;
>
> \* \* \* \* \* \*
> (9) any other unlawful interference with the process or proceedings of the court.

**12.** AS 09.50.020 provides:

> A person who is guilty of contempt is punishable by a fine of not more than $300 or by imprisonment for not more than six months. However, when the contempt is one mentioned in § 10(3)–(12) of this chapter, or in an action before a magistrate, the person is punishable by a fine of not more than $100 unless it appears that a right or remedy of a party to an action or proceeding was defeated or prejudiced by the contempt, in which case the penalty shall be as prescribed for contempts described in § 10(1) and (2) of this chapter.

der to maintain control and supervision over proceedings conducted before it. The contempt power is an adequate means by which the superior court may maintain the orderly and efficient operation of the courtroom. Recognizing the intensity of the feelings often generated by even momentary confrontations between counsel or the court and counsel in the trial arena there is always some danger of hasty or ill-considered action. To allow a trial court to suspend attorneys for contemptuous conduct, at such moments, carries too great a danger that conscientious lawyers might be deterred from zealously representing their clients. As we stated in *McKinnon v. State*, 526 P.2d 18 (Alaska 1974), which concerned the dismissal of an attorney by the trial court, "the threat of summary dismissal for provoking the trial judge's displeasure could intimidate the trial bar and discourage tenacious trial representation." 526 P.2d at 23. Accordingly, we hold that the trial courts do not have authority to suspend attorneys from practice. Only this court may impose such a disciplinary measure in an exercise of its supervisory power over the Bar in this state.

The contempt sanction is REVERSED and the case is REMANDED for such further action as the superior court chooses to take consistent with this opinion.