George M. ROMERO, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10418.

Court of Appeals of Alaska.

May 27, 2011.

---

Julia D. Moudy, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Jonas M. Walker, Assistant District Attorney, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## *OPINION*

BOLGER, Judge.

George M. Romero was convicted of contempt of court for disobeying an order issued by the superior court.[1] He had been appointed as the third-party custodian for a felon who was awaiting a probation revocation proceeding. On appeal, Romero argues that the evidence was insufficient to support his conviction. We agree that the State failed to prove that the superior court issued an order that was sufficiently clear and definite to support a conviction for criminal contempt.

### *Background*

In November 2006, Superior Court Judge Larry D. Card approved Romero as a third-party custodian for Veronica Ashouwak. Ashouwak was a convicted felon who was awaiting disposition of a petition to revoke her probation. Her conduct while on probation had been poor and she was facing a fourth petition to revoke her probation. According to Judge Card, Ashouwak had "major problems with [controlled] substances."

At the bail hearing, the State objected to Ashouwak's release to Romero in part because Ashouwak's performance while under probation supervision was "best described as abysmal" and she needed the "highest level of in-patient substance abuse treatment to avoid her self-destructive and illegal behavior." Despite the State's objection, Judge Card approved Romero as Ashouwak's third-party custodian.

The written conditions of Ashouwak's release required her not to "be where alcohol is sold or consumed" and to have "no guns in [the] home." But even though Judge Card ordered Ashouwak to avoid alcohol, he did not explicitly direct Romero to remove all alcohol from his residence.

A day or two after the bail hearing, Ashouwak's probation officer searched Romero's residence while Ashouwak was there and found alcohol. Based on this evidence, the State charged Romero with violating the duties of a third-party custodian on the ground that he had not reported that Ashouwak had violated her conditions of release.

The State later amended the information and added a second count charging Romero with criminal contempt for knowingly disobeying a lawful court order.[2] The State subsequently dismissed the first count—the charge that Romero had violated his duty to report—and proceeded to trial on the contempt of court charge.

During a hearing prior to trial, the prosecutor told the trial judge, District Court Judge Stephanie Rhoades that the contempt charge was based on Judge Card's oral order that Romero must remove all alcohol from his residence. The prosecutor repeated this assertion in his opening statement at trial

---

1. AS 09.50.010(5); AS 12.80.010.

2. AS 09.50.010 provides: "The following acts or omissions with respect to a court of justice or court proceedings are contempts of the authority of the court: ... (5) disobedience of a lawful judgment, order, or process of the court." AS 12.80.010 provides that this statute applies in criminal proceedings.

before Judge Rhoades. The State maintains this position in this appeal.

### Discussion

Romero contends that Judge Card never ordered him to remove all alcohol from his residence. The State argues that even though "Judge Card's order was not as clear as it could have been," Romero had to have known that he had been ordered to remove any alcohol from his residence before allowing Ashouwak to stay there. To resolve this issue, we view the evidence in the light most favorable to upholding the jury's verdict, asking whether a fair-minded juror exercising reasonable judgment could conclude that the State met its burden of proving guilt beyond a reasonable doubt.[3]

At Romero's trial, the State presented the audio recording of Ashouwak's bail hearing. At that hearing, the prosecutor, Ashouwak's defense attorney, and Judge Card were concerned about Ashouwak's apparent inability to control her alcohol and cocaine abuse. Ashouwak's defense attorney emphasized that Romero had experience as a third-party custodian for persons with chemical abuse issues, especially those with alcohol-related problems.

The defense attorney urged Judge Card to have faith that Romero would follow all duties imposed by the court. The attorney also told the court that Romero was helping to search for an in-patient treatment facility for Ashouwak. And the attorney agreed that Romero would remove his firearms from his house.

The defense attorney then asked Romero if he would "also ... take out any drop of alcohol out of your house[.]" To this, Romero replied, "Yes." Judge Card then commented, "I don't think Mr. Romero drinks

either." Romero responded, "Very seldom," and Judge Card replied, "Okay."

After this exchange, Judge Card outlined Ashouwak's conditions of release: "No alcohol, no drugs, no violation of the law, follow conditions, including reporting to probation officer within 24 hours of release." Judge Card then entered written conditions of release ordering Ashouwak to "not ... consume alcohol or be where alcohol is sold or consumed."

■ Viewing this evidence in the light most favorable to the guilty verdict, we conclude that the State did not prove that Judge Card had ordered Romero to remove all alcohol from his residence. To prove contempt for violating a court order, the State had to prove that Romero was aware of the requirements of a court order.[4] That is, as part of proving that Romero had disobeyed a court order, the State had to prove that the court had entered an order specifically telling Romero what he was required to do.[5]

■ This principle was recently discussed by the Texas Court of Criminal Appeals in *In re Davis*.[6] The *Davis* court explained that a person charged with contempt of court is entitled to procedural due process, including "full and complete notification."[7] Accordingly, "the order underlying a contempt judgment must set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the order will readily know exactly what duties and obligations [have been] imposed upon [him or her]."[8] The "question of whether an order is enforceable by contempt depends on whether the order is definite and certain, and the focus is on the wording of

**3.** *Shorty v. State,* 214 P.3d 374, 383–84 (Alaska App.2009).

**4.** *See Cont'l Ins. Cos. v. Bayless & Roberts, Inc.,* 548 P.2d 398, 407 (Alaska 1976); *O'Brannon v. State,* 812 P.2d 222, 228 (Alaska App.1991); *see also L.A.M. v. State,* 547 P.2d 827, 831 (Alaska 1976); *Hutchison v. State,* 27 P.3d 774, 780 (Alaska App.2001).

**5.** *See Affatato v. Considine,* 305 Ga.App. 755, 700 S.E.2d 717, 723 (2010) (before a defendant can

be found in contempt for violating a court order, the order should inform him in definite terms of the duties imposed upon him; therefore, the command must be express rather than implied) (citations omitted).

**6.** 305 S.W.3d 326 (Tex.App.2010).

**7.** *Id.* at 330.

**8.** *Id.* at 330–31.

the [order] itself." [9] We agree with this discussion.

In this case, the State was required to prove that Judge Card issued an order requiring Romero to remove all alcohol from his residence. But Judge Card did not issue any definite order that Romero was required to do so. So Romero did not have notice that Judge Card had imposed this obligation. In the absence of a specific court order, Romero was not guilty of criminal contempt.

### Conclusion

Romero's conviction is REVERSED. The district court shall enter a judgment of acquittal.

MANNHEIMER, Judge, concurring.

MANNHEIMER, Judge, concurring.

The defendant in this case, George Romero, agreed to be the third-party custodian of a felony probationer, Veronica Ashouwak, who was seeking bail release after the State arrested her for an alleged probation violation. Romero was later convicted of contempt of court in connection with his duties as Ashouwak's third-party custodian—under the theory that he willfully violated an order issued by the judge who presided at Ashouwak's bail hearing and set her conditions of release.

When a person is prosecuted for contempt of court based on their alleged violation of a court order, the State must prove (1) that the court indeed issued an order, (2) that this order was directed to the defendant, and (3) that the order clearly specified what the defendant was required or forbidden to do.

From beginning to end (including the briefing and oral argument of this appeal), the proceedings against Romero have been characterized by fatal ambiguities concerning (1) what court order Romero was accused of violating, and (2) what conduct on Romero's part constituted a violation of that order.

*The State's three theories of what court order Romero violated, and what conduct constituted his act of contempt*

At Romero's trial, the State's attorney argued that Romero violated a court order that was issued orally during the bail hearing in which Romero was approved as Veronica Ashouwak's third-party custodian. At different times during the trial, the State's attorney pointed to two different portions of the bail hearing as being the place where the pertinent court order was issued.

At times, the prosecutor argued that the pertinent court order was issued while Ashouwak's attorney was questioning Romero concerning his fitness and willingness to be Ashouwak's custodian. Just prior to the following exchange between the defense attorney and Romero, the bail hearing judge had told Romero to remove all guns from his home before Ashouwak came to live there. Ashouwak's attorney then resumed his questioning of Romero:

*Ashouwak's Attorney*: And I wanted to address a question that is obvious, but, you know, [we] probably just need to make it [clear] for the record—is that, Mr. Romero, you'd also be willing to take any drop of alcohol out of your house also?

*Romero*: Yes.

*Ashouwak's Attorney*: Okay. I think that that's common sense.

*Bail Hearing Judge*: I don't think Mr. Romero drinks, either.

*Romero*: Very seldom.

*Bail Hearing Judge*: Okay.

*Ashouwak's Attorney*: Okay. And therefore, you—I mean, what we have with Mr. Romero is a live person [who] can make sure that [Ms. Ashouwak] doesn't even go into a liquor store.

*Bail Hearing Judge*: Okay. Thank you.

*Ashouwak's Attorney*: Thank you.

For readers who may be at a loss to discern where, in this exchange, the bail hearing judge ordered Romero to do anything, here is the answer that was offered by the State's attorney at Romero's trial: the prosecutor asserted that Romero agreed (un-

9. *Id.* at 331; *see also United States v. Straub*, 508 F.3d 1003, 1012 (11th Cir.2007) (for purposes of contempt, "[a]n order meets the 'reasonable specificity' requirement only if it is a 'clear, definite, and unambiguous' order requiring the action in question") (citations omitted).

der pain of contempt) to remove all alcoholic beverages from his home when he answered "Yes" to the question posed by Ashouwak's attorney, "You'd also be willing to take any drop of alcohol out of your house?"

Here is the pertinent excerpt of the prosecutor's opening statement at Romero's trial:

*Prosecutor*: Mr. Romero, in order to get the judge to issue that order [releasing Veronica Ashouwak on bail to Romero's custody], raised his hand and said "yes" when Ms. Ashouwak's attorney [asked if] Mr. Romero was willing to remove every drop of alcohol from his house. Now, Mr. Romero didn't say, "Yes, Your Honor, I'll do it if you tell me to." ... He said "yes"—one simple word that became part of a promise to obey an order that the judge then issued.

In other words, the prosecutor argued that when Romero answered "yes" to the defense attorney's question, Romero was actually making an explicit promise to the bail hearing judge: the promise to remove all alcoholic beverages from his house if the judge granted Ashouwak's request for bail release.

According to the prosecutor, because Romero did not say, "I'll do this if the court orders me to", Romero waived his right to have the judge address him personally and explicitly order him to remove the alcoholic beverages from his house. Instead, Romero simply said "yes"—which, according to the prosecutor, meant that all the bail hearing judge had to do was order Ashouwak's release, and then Romero automatically became bound to comply with the defense attorney's suggestion.

Later in Romero's trial, the prosecutor offered a different theory of what court order Romero violated, and when that order was issued. This time, the prosecutor did not rely on Romero's answer to Ashouwak's attorney's question. Instead, the prosecutor relied on what the bail hearing judge said at the conclusion of Ashouwak's bail hearing.

As the bail hearing was coming to an end, the judge announced: "Conditions of probation [*sic*: bail release]: No alcohol. No drugs. No violation of the law. Follow conditions [of probation], including reporting to

probation officer within 24 hours of release." The judge's statements appear to constitute a series of orders addressed to Veronica Ashouwak—since she was the one who was being released on bail, and she was the one who was on probation. However, according to the State's attorney, the judge was also ordering Romero to do these same things.

The prosecutor presented this second theory of Romero's culpability when the prosecutor responded to the defense attorney's request for a judgement of acquittal at the close of the State's case-in-chief. As part of the prosecutor's response to the defense attorney's motion, the prosecutor attempted to clarify the State's theory of the case. In doing so, the prosecutor identified this second theory of prosecution—a theory that varied substantially from the theory the prosecutor had presented earlier in his opening statement:

*Trial Judge*: What, specifically, is the ... oral order that you're relying on? [Is it the] portion wherein [Ashouwak's attorney] says, "This may be obvious, but you'd also be willing to take any drop of alcohol out of the house?" And [Mr. Romero] says, "Yes"?

*Prosecutor*: And then further, Your Honor, at the very end [of the bail hearing], where Judge Card says, "No alcohol." Simply orders "no alcohol". He doesn't specify, "No alcohol to excess"—which is how it's written in the first part of the probation order. He doesn't say, "Don't go into ... a place where alcohol is sold as the primary business", which is a special condition.

*Trial Judge*: And to whom do you believe that order was addressed? "No alcohol"? ... To whom do you believe Judge Card addressed the order, "No alcohol, drugs, violations of law; follow conditions of probation?"

*Prosecutor*: Your Honor, the State's theory of the case is that [the judge's order] was [not only] directed to ... Ms. Ashouwak, but [was] also directed to the defendant, [Mr. Romero,] who had taken a long time to discuss the—his merits as someone who could keep [Ms. Ashouwak] away from alcohol.... You know, Your

Honor, I certainly agree; I mean, there's no—you know, there is no written order where Judge Card says, "You . . .

> *Trial Judge* : . . . My question for you is: The [theory] that you are saying [justifies Romero's conviction for contempt of court] . . . is that Judge Card was ordering *Mr. Romero* to have no alcohol, [no] drugs, [no] violations of law, and [to] follow conditions of probation?
>
> *Prosecutor* : That's correct, Your Honor.
>
> *Trial Judge* : He was ordering [Mr. Romero] to have no alcohol?
>
> *Prosecutor* : That's the State's theory, Your Honor.

Although the trial judge ultimately denied Romero's motion for a judgement of acquittal, the judge apparently did not think much of the prosecutor's second theory, because the trial judge adopted yet a *third* theory of prosecution when she denied the defense motion for a judgement of acquittal.

When the trial judge issued her ruling (denying Romero's motion for a judgement of acquittal), she never stated that the evidence was sufficient to establish that Romero violated a court order directing him to remove all alcoholic beverages from his house. Rather, the judge allowed Romero's case to go to the jury under the theory that Romero violated his duty as a third-party custodian by *failing to report that Ashouwak violated the conditions of her bail release* (purportedly, because Ashouwak was in the presence of alcoholic beverages while she was staying at Romero's house). Here is the judge's ruling:

> *Trial Judge* : While it is clear that the orders in this case were certainly . . . slovenly, the fact of the matter is that Judge Card, out of his own mouth, did specifically say: "No alcohol; [no] drugs; [no] violations of law; follow conditions of probation." And as I look [at] . . . Exhibit Number 4 [*i.e.,* the written order detailing Ashouwak's conditions of bail release], it [shows] that Mr. Romero [as third-party custodian] signed . . . a statement that said: "A person commits the crime of violation of the custodian's duty if the person knowingly fails to immediately report that the person released has violated a condition of release." . . . "Your signature on

this notice means that you have . . . read and fully understand its content. If you have questions, you should bring them to the judge's attention before signing this notice."

So while [Mr. Romero is] not actually accused of that particular crime [*i.e.,* not accused of violating his duty as a third-party custodian, AS 11.56.758], it does appear to me that there is sufficient evidence that has been presented—slim as it is—to send [this case] to the jury, upon which reasonable minds could differ, as to whether there was a court order that was issued [to Ms. Ashouwak]—"no alcohol, [no] drugs"—that . . . [required Mr. Romero] to, at the very least, make an immediate report that alcohol was present or that the defendant was in the presence of alcohol.

At the end of Romero's trial, the prosecutor's summation to the jury was an amalgam of all three different theories. At one point in his summation, the prosecutor told the jurors that Romero was guilty of contempt because he violated the bail hearing judge's verbal order, "No alcohol". At another point in his summation, the prosecutor suggested that Romero was guilty of contempt of court because he violated his duty as a third-party custodian to report that Ashouwak had access to alcohol in Romero's house:

> *Prosecutor* : And if Ms. Ashouwak has alcohol in the house, [Mr. Romero] has duties. He can call the police; he can call the District Attorney's Office. There's a lot of things that Mr. Romero could have done to not be here today. But he chose to have alcohol in the same house as Ms. Ashouwak, and that's why he—that's how he committed this crime [of contempt of court].

Still later in his summation, the prosecutor told the jurors that Romero was guilty of contempt because he violated the promise he made, under questioning by Ashouwak's attorney, to rid his house of even a drop of alcohol:

> *Prosecutor* : [Ms. Ashouwak's] attorney [said to the bail hearing judge]: "Oh, by the way, Your Honor, it's obvious—it's obvious that [Mr. Romero is] going to do this.

But just for the record, let's just make it official: he's willing to take any drop of alcohol out of his house." And at that point, Mr. Romero leans in and says "Yes". One simple word—"yes"—[is what] this whole case rests on.

These, then, were the three theories of contempt that the prosecutor argued to the jury at Romero's trial.[1]

In the present appeal, the State argued two of these theories in its brief to this Court. The State's general contention was that Romero was placed under a court order to remove all alcoholic beverages from his house—but the State presented two different theories as to when this order was imposed on Romero.

The State's first argument (found on page 10 of its brief) was that the court imposed this order while Romero was being questioned at the bail hearing by Ashouwak's attorney—when the defense attorney asked Romero if he would be willing to remove all alcohol from his house, and Romero answered "yes", and then the bail hearing judge remarked, "I don't think Mr. Romero drinks, either", and Romero responded, "Very seldom", and then the bail hearing judge said, "Okay".

The State's second argument (found on page 11 of its brief) was that the court ordered Romero to remove all alcoholic beverages from his house when, at the very end of the bail hearing, the judge said, "Conditions of probation [sic: bail release]: No alcohol. No drugs. No violation of the law."

But at the oral argument in this case, the State expressly abandoned this second argument—the one based on the judge's statement, "No alcohol. No drugs". The State's attorney declared that the State's sole theory of prosecution was that, when the bail hearing judge said "Okay" while Ashouwak's attorney was questioning Romero about his

willingness to remove all alcoholic beverages from his home, the judge's one-word interjection constituted a court order directing Romero to remove the alcoholic beverages from his home.

*Why the State's argument must be rejected*

The first obvious problem with the State's current argument is that Romero's case was submitted to the jury on three different theories—not only the State's current theory of liability, but also two other theories. Even if we accepted the validity of the State's current theory, it appears that we would have to reverse Romero's conviction, because it is impossible to know which theory or theories the jurors relied on. But there is a more fundamental flaw in the State's position.

As I noted at the beginning of this concurrence, when a person is prosecuted for contempt of court based on their alleged violation of a court order, the State must prove (1) that the court indeed issued an order, (2) that this order was directed to the defendant, and (3) that the order clearly specified what the defendant was required or forbidden to do.

A person can not be convicted of contempt of court when reasonable persons would differ as to whether the purported underlying order was actually issued, or whether that order was directed to the defendant. Moreover, even when it is clear that a court order was issued, and that this order was directed to the defendant, a person can not be convicted of contempt of court for violating that order when reasonable persons would differ as to the meaning of that order (unless the evidence reveals, beyond a reasonable doubt, that the defendant understood the court's order to mean what the government asserts).

It is not enough for the jurors to reach their own after-the-fact conclusion about what the court order really required or prohibited, and then convict the defendant if the

---

1. I note that it was error to allow the jury to consider these different theories without requiring the jury to reach unanimous agreement as to whether Romero committed contempt (1) by failing to remove all alcoholic beverages from his house or, instead, (2) by failing to notify the authorities that Ashouwak was residing in a house that contained alcoholic beverages. These

are two distinct acts, and Romero was entitled to a unanimous jury decision regarding the conduct that constituted his act of contempt. *See Covington v. State*, 703 P.2d 436, 440 (Alaska App. 1985); *State v. Petrich*, 101 Wash.2d 566, 683 P.2d 173, 176–77 (1984) (later overruled on other grounds).

defendant's conduct deviated from the jurors' interpretation of the order. As explained by the Texas Court of Appeals,

> The order underlying a contempt judgment must set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the order will readily know exactly what duties and obligations are imposed upon [them]. The question of whether an order is enforceable by contempt depends on whether the order is definite and certain, and the focus is on the wording of the judgment itself. If the court's order requires inferences or conclusions about which reasonable persons might differ, it is insufficient to support a judgment of contempt.

*In re Davis,* 305 S.W.3d 326, 330–31 (Tex. App.2010) (citations omitted).

At various times during its prosecution of Romero, the State has identified three different "orders" as forming the basis for the prosecution—three different statements made by the judge at Ashouwak's bail hearing. Now, following the oral argument of this appeal, the State has confined itself to the theory that the "order" in question was the judge's one-word interjection, "Okay", while Romero was being questioned by Ashouwak's attorney.

My colleagues and I agree that reasonable people would necessarily differ as to whether the judge's utterance of this single word was an order at all.

It is fundamentally unfair to subject people to imprisonment (or even the hardship of a criminal trial) based on an after-the-fact characterization of an aside or other stray remark made by a judge during a court proceeding. If a judge intends to direct someone to engage in specified conduct, or to refrain from specified conduct, the judge must clearly articulate that what they are saying *is* an order, and that this order is directed to a particular person or group of persons.

In Romero's case, the bail hearing judge uttered the word "okay" twice:

*Ashouwak's Attorney*: And I wanted to address a question that is obvious, but, you know, [we] probably just need to make it [clear] for the record—is that, Mr. Romero, you'd also be willing to take any drop of alcohol out of your house also?

*Romero*: Yes.

*Ashouwak's Attorney*: Okay. I think that that's common sense.

*Bail Hearing Judge*: I don't think Mr. Romero drinks, either.

*Romero*: Very seldom.

*Bail Hearing Judge*: Okay.

*Ashouwak's Attorney*: Okay. And therefore, you—I mean, what we have with Mr. Romero is a live person [who] can make sure that [Ms. Ashouwak] doesn't even go into a liquor store.

*Bail Hearing Judge*: Okay. Thank you.

*Ashouwak's Attorney*: Thank you.

The first time that the judge said "okay", it appears that the judge may merely have been acknowledging Romero's statement that he "very seldom" drank alcoholic beverages. Or the judge may have been indicating that it was all right with him if Romero confined himself to occasional drinking. The second time that the judge said "okay", it appears that the judge may merely have been acknowledging that Ashouwak's attorney had reached the conclusion of his presentation. Or the judge may have been indicating that he believed it was a good thing that Romero would supervise Ashouwak to make sure that she did not go into any liquor stores.

If the system of third-party custodianship is going to function—if ordinary citizens are to remain willing to come forward and volunteer their services in supervising people who stand accused of a crime—then it is imperative that these citizens be clearly informed of the obligations they are taking on. The system will not work if third-party custodians risk criminal prosecution based on every ambiguous or off-hand remark made by the judge during the bail hearing.

The meaning of the bail hearing judge's remark—his intent when he uttered the word "Okay"—is not clear and unambiguous. Reasonable people would necessarily differ as to whether this remark constituted an

order at all. Consequently, reasonable people would necessarily differ as to whether Romero committed contempt of court.

The prosecution of Romero for contempt of court was predicated on taking this off-hand, ambiguous judicial remark and interpreting it, after-the-fact, in the manner most unfavorable to Romero. My colleagues and I agree that this is unlawful, and that Romero's conviction must be reversed.