Larry James CARTER, Appellant,

v.

Christine Karen BRODRICK, Appellee.

No. A–1333.

Court of Appeals of Alaska.

March 4, 1988.

---

844

Jacqueline Bressers, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for the State of Alaska, as amicus curiae.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Larry James Carter was convicted of contempt following a non-jury trial before Superior Court Judge Victor D. Carlson. Judge Carlson sentenced Carter to a term of six months' imprisonment with three months suspended. The contempt charge arose from Carter's failure to comply with the court's child custody order. Pursuant to the direction of the superior court, the contempt was prosecuted by the attorney representing Carter's former wife—the aggrieved party in the underlying civil case. Carter appeals, contending that the trial court erred in requiring him to testify and in applying the preponderance of the evidence standard to determine his guilt. Carter also contends that the trial court erred in directing that the case be prosecuted by the opposing party in the underlying civil case. We reverse.

■ Whether a contempt action is civil or criminal in nature depends upon the character and purpose of the proceeding. *Johansen v. State,* 491 P.2d 759, 763–65 (Alaska 1971). Civil contempt proceedings are by nature remedial: their goal is to coerce litigants to comply with the lawful orders of the court in order to remedy harm occasioned to other litigants by the noncompliance. *Id.; Gwynn v. Gwynn,* 530 P.2d 1311 (Alaska 1975). Persons incarcerated for civil contempt are not sentenced to definite terms of imprisonment. Rather, they "carry the keys of their prison in their own pockets." *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902). By agreeing to comply with the court's order, they may purge themselves of contempt and be released. *Johansen,* 491 P.2d at 766.

In contrast, criminal contempt proceedings seek to punish violations that have already occurred. *Id.* They are in essence punitive and not remedial. *Gwynn,* 530 P.2d at 1312–13; *L.A.M. v. State,* 547 P.2d 827, 831 (Alaska 1976). Because a criminal contempt proceeding seeks to punish past disobedience, future compliance will not purge the contempt. *See Webber v. Webber,* 706 P.2d 329 (Alaska App.1985). Thus, a characteristic feature of a criminal con-

tempt proceeding is that it is punishable by a definite term of imprisonment. *Johansen,* 491 P.2d at 764–66. "[C]riminal contempt [is] a crime in every fundamental respect because it 'is a violation of the law, a public wrong which is punishable by fine or imprisonment or both.'" *State v. Browder,* 486 P.2d 925, 934 (Alaska 1971) (quoting *Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 1481–82, 20 L.Ed.2d 522 (1968)).

 A contempt that occurs outside the presence of the court is said to be indirect; one occurring in the court's presence is a direct contempt. *See West v. District Court,* 575 P.2d 797 (Alaska 1978). Under the Alaska Constitution, however, little distinction is drawn between direct and indirect criminal contempt. A person charged with either direct or indirect criminal contempt is entitled to the same procedural rights that exist in other classes of criminal prosecution. *Browder,* 486 P.2d at 939–40. *See also Bloom v. Illinois,* 391 U.S. at 201, 88 S.Ct. at 1481–82. Every element of a criminal contempt must be proved beyond a reasonable doubt, and the accused cannot be compelled to render testimony that might be self-incriminatory. *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 420, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *Continental Insurance Cos. v. Bayless & Roberts, Inc.,* 548 P.2d 398, 407 (Alaska 1976).

 In the present case, there is little question that Carter was convicted of criminal contempt: the purpose of the proceedings below was to punish him for his past failure to comply with a visitation order, and, upon finding Carter guilty, the superior court imposed a definite term of imprisonment. Despite the criminal nature of the proceedings, the superior court applied the preponderance of the evidence standard in determining Carter's guilt. The court also required Carter to testify as the prosecution's chief witness, thereby depriving him of his right against self-incrimination. In so doing, the court relied on *Johansen v. State,* 491 P.2d 759 (Alaska 1971). Its reliance on *Johansen* was mistaken.

While *Johansen* was a contempt proceeding for nonpayment of child support, the case dealt exclusively with what has been traditionally regarded as civil contempt—a contempt proceeding whose purpose was to coerce future payment rather than to punish for past failure to pay. 491 P.2d at 766. The court in *Johansen* noted some potential difficulties in treating civil contempt cases for failure to pay support as entirely noncriminal for procedural purposes. Accordingly, the court struck a balance, conferring some, but not all of the benefits of a formal criminal proceeding upon individuals charged with civil contempt in such cases. *Id.* at 766–67. The court in *Johansen* expressly recognized, however, that when a nonpayment of support case is prosecuted as a criminal contempt, "the defendant would have to be afforded full procedural safeguards." *Id.* at 766 n. 27.

 Because the present case was prosecuted as a criminal contempt, we conclude that the superior court erred in depriving Carter of his right against self-incrimination and in applying the preponderance of the evidence standard to his case. We further conclude that these errors require reversal of Carter's conviction. *See Delaware v. VanArsdell,* 475 U.S. 673, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674 (1986).

Carter has also argued that the trial court erred in permitting the contempt action to be prosecuted by the attorney who represented his former wife. Carter relies on the United States Supreme Court's recent ruling in *Young v. United States ex rel. Vuitton Et Fils S.A.,* —— U.S. ——, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).

In *Rollins v. State of Alaska ex rel. Municipality of Anchorage,* 748 P.2d 767 (Alaska App.1988), this court, in light of *Young,* expressed concern about the wisdom of routinely appointing, as prosecutor in a criminal contempt action, counsel for the aggrieved party in the underlying civil litigation. We nevertheless declined to apply *Young* to the circumstances in *Rollins,* because the party appointed to prosecute that case was not a private party, but, rather, was the Municipality of Anchorage, a governmental body that was duly authorized to and, in fact, regularly

did perform the functions of a public prosecutor.

This case, in contrast, presents a far more difficult issue, because it involves a prosecution by a private party. However, Carter did not object below to the superior court's order appointing his former wife's counsel to prosecute the case, and the superior court did not have the opportunity to consider its appointment in light of the Supreme Court's decision in *Young*. Because Carter's conviction must be reversed on other grounds, we believe it preferable to allow the superior court an opportunity to consider in the first instance the conflict issue raised by *Young*. In the event of a retrial, the superior court should give due consideration to *Young* and *Rollins* in resolving the question of appointing a prosecutor for this case.

The conviction is REVERSED.