NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific*</u> <u>*Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, | Court of Appeals No. A-11121 |
| Appellant, | Trial Court No. 3AN-11-5513 CR |
| v. | |
| | O P I N I O N |
| LARRIES LEE WILLIAMS, | |
| Appellee. | No. 2472 — August 28, 2015 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellant. Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

For centuries, Anglo-American law has recognized the power of the courts to hold litigants in contempt for disruption of judicial proceedings and willful

_____

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

disobedience of judicial orders. The question presented in this appeal is: When someone violates (or allegedly violates) a court order, who decides whether the situation merits a contempt proceeding?

Traditionally, the law has entrusted this decision to the court whose order was disobeyed. But the State argues that the executive branch now has the authority to pursue contempt proceedings against people and organizations who violate court orders, and the authority to require the court to adjudicate the contempt charge, regardless of how the court views the matter.

For the reasons explained in this opinion, we conclude that the State's view of the law is incorrect. Alaska law does, indeed, give executive branch prosecutors the authority to *initiate* contempt charges. But the judicial branch retains the authority to decide whether a particular contempt charge should go forward to adjudication. The executive branch can not force the court to entertain a contempt proceeding after the court has affirmatively decided that a contempt prosecution is unwarranted.

*Underlying facts*

The defendant in this case, Larries Lee Williams, was subpoenaed to appear and testify before an Anchorage grand jury in connection with a homicide. Williams failed to appear, so the State obtained a warrant for his arrest. About a month later, Williams was arrested on this warrant.

In the meantime, the grand jury hearing to which Williams had been subpoenaed went forward — without Williams's testimony — and the State obtained the indictment it was seeking.

Following Williams's arrest, he was brought before the superior court. At that time, the State filed a criminal information against Williams, charging him with contempt of court under AS 09.50.010(10) for failing to honor the grand jury subpoena.

Williams moved to dismiss the contempt charge, arguing that the State had not been prejudiced by his failure to appear (since the State obtained its indictment anyway). The State opposed the dismissal, arguing that the current version of Alaska's contempt statute (enacted in 2006) no longer required proof that the defendant's disobedience to a court order had actually prejudiced the complaining party. In the alternative, the State argued that Williams's failure to appear at grand jury had, in and of itself, prejudiced the State's interests.

The superior court granted Williams's motion to dismiss the contempt charge, but not on the ground that Williams proposed. Instead, the superior court declared that the 2006 version of the contempt statute was void for vagueness, in that it failed to provide intelligible standards for differentiating the conduct that would support a charge of criminal contempt versus a charge of civil contempt. In addition, the superior court found that Williams had been the victim of selective prosecution — *i.e.*, that the State had acted arbitrarily in charging Williams with criminal contempt (and not charging any other prospective witnesses who failed to honor their subpoenas).

For these reasons, the superior court dismissed the criminal contempt charge against Williams. The State now appeals.

We affirm the dismissal of Williams's contempt charge — but not for the reasons given by the superior court. As we explain in this opinion, even though Alaska's contempt statutes, AS 09.50.010 and AS 09.50.020, may give the executive branch the authority to initiate a contempt charge based on a person's failure to comply with a court order, the ultimate authority to decide whether that charge should go forward to trial and

judgement rests with the judiciary — more specifically, with the court whose order has been violated.

In Williams's case, the superior court did not dismiss the contempt charge under this rationale. However, after allowing the State to explain why Williams should be punished for criminal contempt, the court clearly concluded that a criminal prosecution was not warranted. This being so, the court had the authority to dismiss the charge regardless of the district attorney's wishes.

*The concept of contempt, and the distinction between criminal and civil contempt*

As our supreme court explained in *State v. Browder*, 486 P.2d 925 (Alaska 1971), and again in *Johansen v. State*, 491 P.2d 759 (Alaska 1971), the law has long recognized the courts' authority to prosecute and punish people for disrupting judicial proceedings and for willfully violating court orders. [1]

In the nineteenth century, both English and American courts adopted a distinction between "criminal" contempt and "civil" contempt in cases where a person violates a court order. [2] This distinction does not rest on the defendant's *conduct*, but rather on the *consequence* that the court believes is appropriate for the defendant's act of disobedience.

As the supreme court explained in *Johansen*, 491 P.2d at 763-64, a prosecution for contempt is classified as a "criminal" contempt if the punishment to be inflicted is a fixed term of imprisonment, a fixed fine, or some other one-time

---

[1] *Browder*, 486 P.2d at 933-34; *Johansen*, 491 P.2d at 763.

[2] *Johansen*, 491 P.2d at 763.

punishment intended to vindicate the authority of the court by imposing consequences for a past act of disobedience.

In contrast, a prosecution for contempt is classified as "civil" if the punishment (1) is primarily designed to benefit a litigant who is harmed or disadvantaged by the defendant's continuing refusal or neglect to obey a court order, and if the punishment (2) "is conditional upon the defendant's continued refusal to comply with the court's order." *Id.* at 764. That is, a prosecution for contempt is "civil" if the punishment is designed to coerce an obstinate or neglectful party to honor their obligations under the court's order, and if the punishment ceases once that party has complied with their obligations.

(A classic example of a "civil" punishment for contempt is the imprisonment of a recalcitrant witness until the witness agrees to testify, or the imposition of a daily fine on an organization, or its leaders, until they comply with an injunction.)

Because the same act of disobedience to a court order can give rise to a prosecution for criminal contempt or a prosecution for civil contempt (or conceivably both[3]), it is often not particularly helpful to refer to an act of disobedience as a "criminal contempt" or a "civil contempt". These phrases do not describe the act of disobedience. Rather, they describe the type of prosecution and punishment that the defendant will face for the act of disobedience.

We note that, in the current version of AS 09.50.020(a) (as amended in 2006), the term "civil contempt" is used in a way that does not conform to this established law. The statute appears to envision a one-time, fixed monetary penalty for each instance of "civil contempt". But as we have just explained, the three legal premises of civil contempt proceedings are: (1) that there is an *ongoing* violation of a

---

[3] *See United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed.2d 884 (1947).

court order, (2) that the contemnor's punishment is open-ended (for as long as the willful disobedience continues), and (3) that the contemnor's punishment will cease as soon as the contemnor complies with the court order.

In addition, AS 09.50.020 only mentions a monetary penalty for acts of civil contempt. By apparently eliminating imprisonment as a punishment for civil contempt, the statute again deviates from established law. As we have already noted, imprisonment is a traditional method used in civil contempt proceedings when a recalcitrant witness refuses a judge's direct order to testify.

As we explain later in this opinion, the Alaska Supreme Court has already held that the penalty provisions of AS 09.50.020 are not binding on the superior court.[4] We therefore do not need to resolve the apparent inconsistencies between AS 09.50.020 and the established law of civil contempt.

*Who may initiate contempt proceedings*

We now address the question of who is authorized to initiate a prosecution for contempt.

Because "[t]he contempt power has been consistently recognized by American courts to be an inherent power of the judiciary",[5] courts have traditionally been empowered to initiate contempt proceedings when the court learns that a person has (or may have) willfully violated a court order.

---

[4] *Continental Insurance Companies v. Bayless & Roberts, Inc.*, 548 P.2d 398, 410-11 (Alaska 1976).

[5] *Continental Insurance Companies v. Bayless & Roberts, Inc.*, 548 P.2d 398, 408-09 (Alaska 1976).

(Indeed, at common law, courts were not only empowered to initiate contempt proceedings, but also to prosecute and adjudicate allegations of contempt "without the intervention of any other agency". *State v. Browder*, 486 P.2d at 933-34, quoting the United States Supreme Court in *Bloom v. Illinois*.[6])

Now, under Alaska Civil Rule 90(b), any party to a judicial proceeding can ask the court to initiate contempt proceedings against a person who has willfully violated (or is willfully violating) a court order. The aggrieved party can make this request *ex parte* (that is, without notice to the person who is accused of contempt),[7] but the request must be supported by affidavits or sworn testimony.

If the court concludes that a "proper showing" has been made (a phrase that is not defined in Civil Rule 90), then Rule 90(b) provides that the court can order the alleged contemnor to show cause why they should not be punished for the act of contempt, or, if the situation warrants it, the court can issue a bench warrant for the alleged contemnor's arrest.

The Alaska Supreme Court has also held that, because willful disobedience of a court order is a violation of the law, *see* AS 09.50.010(5), the State is empowered to initiate proceedings for criminal contempt for any "past willful flouting of the court's authority", even when the State is not a party to the litigation. *Johansen*, 491 P.2d at 766 n. 27; *see also Public Defender Agency v. Superior Court*, 534 P.2d 947, 949 (Alaska 1975); *Carter v. Broderick*, 750 P.2d 843, 845 (Alaska App. 1988) (declaring that willful disobedience of a court order is "a public wrong").

---

[6] 391 U.S. 194, 196; 88 S.Ct. 1477, 1479; 20 L.Ed.2d 522 (1968).

[7] *See Taylor v. State*, 977 P.2d 123, 124 n. 1 (Alaska App. 1999) (explaining the technical meaning of "*ex parte*").

*Who decides whether an allegation of criminal contempt should go forward to adjudication and sentencing*

We now reach the crux of the current appeal: Who decides whether a contempt charge goes forward to prosecution and adjudication?

The present case involves a proposed criminal prosecution for "indirect" contempt. Williams's alleged act of disobedience was a willful failure to honor a grand jury subpoena. Although it may have been obvious that Williams failed to attend the grand jury hearing, his failure to attend would not be an act of contempt unless it was *willful*. And the question of willfulness would inevitably hinge on information not known to the court — information that would have to be established through the presentation of evidence.

Thus, the contempt (if any) was an indirect contempt.[8] In these circumstances, both federal law and Alaska law guarantee a jury trial to the defendant.[9]

Because our form of government involves three independent branches (executive, legislative, and judicial), this requirement of a trial raises separation-of-powers questions.

What happens if a court wishes to pursue a contempt prosecution, but the executive branch does not wish to prosecute the case? And what happens when, as in the instant case, the executive branch wants to pursue a contempt prosecution, but the court concludes that contempt proceedings are not warranted?

In cases of criminal prosecution for indirect contempt, the courts retain their unilateral *prosecutorial* authority, independent of the executive branch. As our supreme

---

[8] *See United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996) (holding that the failure of a witness to appear in response to a subpoena was an indirect contempt "since the court did not witness all of the essential elements of the misconduct").

[9] *Browder*, 486 P.2d at 939; *Bloom v. Illinois*, 391 U.S. at 198, 88 S.Ct. at 1480.

court explained in *Browder*, "[A] court has the authority to cite [a person] for criminal contempt (*i.e.*, to bind the alleged contemnor over for trial) on its authority alone." *Id.* at 939.

However, a court has no power to force executive branch prosecutors to assist in the prosecution of a contempt charge. The decision whether to actively participate in the prosecution of any given case is discretionary on the part of the executive branch. If government prosecutors decline to prosecute a contempt charge that a court wishes to pursue, the court has no authority to order the executive branch to undertake the prosecution. *Public Defender Agency*, 534 P.2d at 950-51.

On the other hand, the executive branch has no veto power over a court's authority to pursue contempt charges. In instances where the executive branch declines to assist in the prosecution of a contempt charge, a court has the authority to appoint an independent prosecutor.

The United States Supreme Court addressed this issue in *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). In *Young*, the Supreme Court held that a federal court has the power to appoint a special prosecutor to pursue a charge of criminal contempt when the Department of Justice declines to prosecute. Although the Supreme Court was declaring the power of the federal courts, the Supreme Court's reasoning applies equally to the judicial power of state courts:

> The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches. ... Courts cannot be at the mercy of another Branch in deciding whether such proceedings should be initiated. The ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection, without

– 9 –                                                    2472

which courts would be "mere boards of arbitration whose judgments and decrees would be only advisory." [Quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911)]

*Young*, 481 U.S. at 796, 107 S.Ct. at 2131-32.

And, indeed, state courts have reached the same conclusion under state law. *See*, *e.g.*, *In re Thirty-Fifth Statewide Investigating Grand Jury*, 112 A.3d 624, 630-31 (Pa. 2015); *In re Mowery*, 169 P.3d 835, 842-46 (Wash. App. 2007); *In re Dependency of A.K.*, 125 P.3d 220, 231 (Wash. App. 2005).

But though there are many appellate decisions holding that the judiciary has an inherent, independent authority to pursue prosecutions for criminal contempt even when the executive branch declines to participate, it is far rarer to find an appellate decision dealing with the converse situation — instances where the executive branch wishes to prosecute a person for criminal contempt, but the court whose order was violated does not believe that a criminal contempt prosecution is appropriate.

In fact, we could find no such decision. There is, however, a decision by the New Jersey Supreme Court — *Department of Health v. Roselle*, 169 A.2d 153 (N.J. 1961) — that addresses a related issue: whether a court is required to hold criminal contempt proceedings whenever a private litigant proves, or offers to prove, that they have been prejudiced by someone's violation of a court order.

The New Jersey court concluded that the court, and the court alone, must make the decision whether the violation merits a criminal contempt prosecution: "[A] prosecution for contempt can be initiated only by the court itself. ... The litigant's role is to acquaint the court [with the violation], rather than to level the charge." *Roselle*, 169 A.2d at 159.

The New Jersey court explained that this rule arises from the principle of judicial autonomy, and also from the policy that prosecutions for criminal contempt should be reserved for the most egregious or intractable violations of court orders:

> There are important reasons why the decision must be the court's and only the court's. The contempt process ... should be used sparingly. A litigant should not be permitted to invoke the criminal process as a thumbscrew to achieve a private result. A judge should be alert to this possible misuse and should guard against it in deciding whether and when a criminal prosecution should be instituted.

*Ibid.*

The Alaska Supreme Court has never analyzed this issue so directly. But our supreme court has stated that the decision whether to pursue a criminal contempt prosecution against a particular litigant, and likewise the decision whether to continue to pursue an already initiated criminal contempt proceeding, are committed to the court's discretion. *See Stuart v. Whaler's Cove, Inc.*, 144 P.3d 467, 469 (Alaska 2006), and *J.M.R. v. S.T.R.*, 15 P.3d 253, 258 (Alaska 2001).

In its brief to this Court, the State argues that even though this rule may govern *private litigants'* requests for contempt prosecutions, the rule is different when *government prosecutors* conclude that a person should be prosecuted for criminal contempt.

The State points out that the Alaska Legislature has declared that willful disobedience of a court order is a public wrong; *see* AS 09.50.010(5). Based on this, the State argues that it has the authority to prosecute any and all instances of criminal contempt, regardless of whether the court approves — the same prosecutorial discretion that the State wields with respect to any other crime defined by Alaska law.

We do not doubt the legislature's authority to declare that willful disobedience of a court order is a public wrong — thus implicitly declaring that such misconduct is a proper concern of the executive branch of government, even when the government is not itself a party to the litigation in which the contempt arises.

But we do question the State's assertion that the legislature may grant executive branch officials the power to force courts to entertain and adjudicate prosecutions for criminal contempt, even when the court concludes that a prosecution is unwarranted.

The legislature may lawfully enact statutes that specify procedures for contempt prosecutions, or that specify penalties for those found guilty of contempt. But the Alaska Supreme Court has squarely held that the contempt power remains inherent in the judicial branch, and that any such legislative enactments are not binding if they impede the courts from the full and proper exercise of the contempt power. This issue was presented in *Continental Insurance Companies v. Bayless & Roberts, Inc.*, 548 P.2d 398, 410-11 (Alaska 1976).

One of the questions raised in *Continental Insurance* was whether the superior court could lawfully impose a penalty of $10,000 for a litigant's willful failure to obey a discovery order, when the existing version of Alaska's contempt statute, AS 09.50.020, specified a maximum penalty of $300. [10] The supreme court explained that the true underlying legal issue was whether, or to what extent, the legislature possessed the authority to limit a court's contempt power, given that "[t]he contempt power has been consistently recognized by American courts to be an inherent power of the judiciary." [11]

---

[10] *Continental Insurance*, 548 P.2d at 408.

[11] *Id*. at 408-09.

– 12 –                                                    2472

In answering this question, the supreme court acknowledged the legislature's authority to enact statutes to govern contempt proceedings and to prescribe penalties for contempt. But because the contempt power is inherent in the judicial branch, the supreme court held that these statutes were ultimately not binding on the courts if the effect of the statutory provisions was to "fetter the [contempt] power itself". *Id.*, 548 P.2d at 410.[12]

> [Legislative] enactments endeavoring to restrict the court's contempt powers are entitled to respect as an opinion of a coordinate branch of the government[,] but [they] are not binding on the court. An exception to this rule pertains to courts created by legislative enactment. There the legislature does have the power to limit the court's exercise of contempt procedures. [But in] Alaska, ... the supreme and superior courts were created by the Alaska State Constitution and not by legislative enactment. Thus, statutory enactments which endeavor to limit the necessary contempt powers of the Alaska superior and supreme courts are not binding.

*Id.* at 410-11.

The supreme court added that "statutory enactments [which] reasonably regulate the contempt power ... should be given effect as a matter of comity", because these enactments represent "the opinion of a coequal branch of the government". *Id.* at 411. But the court squarely held that legislative enactments will not be permitted to "fetter the efficient operation of the courts or impair their ability to uphold their dignity and authority." *Ibid.*

The issue in *Continental Insurance* was whether the maximum penalty specified in the contempt statute was binding on the courts if that maximum penalty was clearly inadequate to preserve the court's authority and efficacy. But courts in other

---

[12] Quoting *In re Shortridge*, 34 P. 227, 229 (Cal. 1893).

states have held that this same principle — the principle that the contempt power is inherent in the judicial branch of government — forbids the legislature from restricting the judiciary's use of the contempt power, or limiting the instances in which this power may be employed.

*See Walker v. Bentley*, 660 So.2d 313, 317-321 (Fla. App. 1995) (holding unconstitutional a statute which prohibited courts from using criminal contempt proceedings to enforce domestic violence restraining orders, and which required that all such prosecutorial decisions be made by the executive branch); *LaGrange v. State*, 153 N.E.2d 593, 595 (Ind. 1958) ("The power to punish for contempt ... is essential to the existence and functioning of our judicial system, and the legislature has no power to take [it] away or materially impair it.").

If, as our supreme court held in *Continental Insurance*, the contempt power is an inherent power of the judicial branch, then one essential facet of judicial independence is the ability to wield this contempt power — or to refrain from wielding it — without regard to the desires of executive or legislative officials.

The rule that the State proposes — a rule requiring courts to entertain and adjudicate all criminal contempt charges filed by the State — would not only seriously undermine judicial independence, but it would also give the State enormous power to influence the course of all litigation, both civil and criminal.

Under AS 09.50.010(5), any willful "disobedience of a lawful judgment, order, or process of the court" constitutes an act of contempt. Likewise, under AS 09.50.010(3), any "[willful] neglect or violation of duty" committed by a lawyer, or a police officer, or a judge — indeed, committed by "[any] person appointed or elected to perform a judicial or ministerial service" — also constitutes an act of contempt.

Anyone acquainted with judicial proceedings knows that, from time to time, attorneys fail to meet court deadlines, or fail to satisfactorily comply with court orders,

– 14 – 2472

or arrive late for scheduled court appearances. Moreover, fines and restitution are not always paid on time; witnesses fail to appear for depositions; and court rulings are not always issued when promised.

Because these things occur on a regular basis, it would fundamentally — and detrimentally — alter the litigation process if the Department of Law were given a unilateral authority to decide who would face criminal prosecution for these acts of "disobedience", "neglect", and "violation of duty".

In cases where the State was a party, the State would have a privileged status — unlike their opponents — not only to *ask* the court to pursue criminal contempt proceedings in these circumstances, but to *demand* it. As the New Jersey Supreme Court explained in *Roselle*, litigants should not be permitted "to invoke the criminal process as a thumbscrew to achieve a private result." 169 A.2d at 159.

And in cases where the State was not a party, executive branch prosecutors would have unfettered authority to effectively intervene in the litigation and force the court to entertain contempt proceedings against any attorney, party, or witness who the government believed had violated one of the provisions of AS 09.50.010.

These results would seriously shift the balance of power between the executive and judicial branches of government. They would materially "fetter the efficient operation of the courts [and] impair their ability to uphold their dignity and authority." *Continental Insurance*, 548 P.2d at 411.

For these reasons, we doubt that the Alaska Legislature would have the authority to order the superior court to entertain and adjudicate all charges of criminal contempt filed by the executive branch, regardless of whether the court believed that a criminal prosecution was warranted. But we need not reach this question of constitutional law, because we are convinced that the legislature did not intend this result when it enacted the current version of Alaska's contempt statutes.

As we explained earlier, the contempt power has for centuries been recognized as an inherent power of the judiciary. Under the Alaska Supreme Court's decision in *Continental Insurance*, the legislature has a limited, non-binding authority to specify the procedures and penalties that will apply to contempt proceedings. For instance, as we noted earlier, we do not doubt the legislature's decision to designate contempt as a crime, thus empowering the executive branch to file contempt charges, even when the government is not an aggrieved party. But there is nothing in the history of AS 09.50.020 to indicate that the legislature intended to circumscribe the judiciary's traditional authority to make the final decision regarding who should be prosecuted for criminal contempt.

The current version of the statute was drafted during the 2006 legislative session. The Department of Law initiated this process by seeking a change in the wording of AS 09.50.020(a), the provision that specifies the penalties for contempt. The Department's declared purpose was to increase these penalties so that they offered a credible deterrent to witnesses who might be tempted to ignore their subpoenas.[13]

Before the 2006 amendment, the statute specified a penalty of up to $300 or up to 6 months in jail for acts of "disorderly, contemptuous, or insolent behavior toward [a] judge while holding ... court", or for any other "breach of the peace, boisterous conduct, or violent disturbance" that tended to interrupt a judicial proceeding.[14] This same penalty was theoretically available for all other acts of contempt (including disobedience of a subpoena) — but only if "a right or remedy of a party ... was defeated or prejudiced by the contempt". In all other instances (*i.e.*, absent

---

[13] *See* Minutes of the Senate Judiciary Committee for March 8, 2006 @ 9:40:01 to 9:42:44 (remarks of Chief Assistant Attorney General Dean Guaneli).

[14] Former AS 09.50.010(1)-(2) and former AS 09.50.020(a).

proof that a party was prejudiced), the maximum penalty for these contempts was "a fine of not more than $100". [15]

The Department of Law was concerned that, in numerous cases, the State would not be able to prove that a witness's refusal to honor a subpoena actually prejudiced the State's case — meaning that the recalcitrant witness would face no more than a $100 fine. To solve this problem, the State asked the Legislature to eliminate the requirement of prejudice when the act of contempt was a failure to honor a subpoena or a refusal to be sworn as a witness — thus subjecting these witnesses to a penalty of 6 months in jail regardless of whether their refusal to testify made any difference to the outcome of the proceeding. [16]

Eventually, in August 2006, the House Judiciary Committee adopted a revised version of the bill that went considerably farther than the Department's proposal. This is the version that ultimately became law; *see* TSSLA 2006 (*i.e.*, session laws of the third special session of 2006), ch. 1, § 1.

Instead of abrogating the requirement of prejudice for one group of contemnors (witnesses who failed to honor their subpoenas), the House version completely eliminated the requirement of prejudice for *all* acts of contempt. At the same time, the House increased the penalties for all acts of contempt. Criminal contempt is now a class A misdemeanor — meaning that the punishment is imprisonment for up to 1 year, and a fine of up to $10,000. (*See* AS 12.55.135(a) and AS 12.55.035(b)(5).)

---

[15] Former AS 09.50.020(a).

[16] *See* CSSB 206 (Jud) (*i.e.*, the Senate Judiciary Committee's substitute for Senate Bill 206) offered on March 15, 2006. *And see* the Minutes of the Senate Judiciary Committee for March 8, 2006 @ 9:40:00 to 9:42:44 (discussing Senate Bill 206 (24th Legislature)), and the Minutes of the House Judiciary Committee for August 4, 2006 @ 3:48:00 to 3:52:20 (discussing a subsequent version introduced during special session, SB 3005).

Throughout the discussion of these provisions by legislators and representatives of the Department of Law, no one ever suggested that this revised statute would endow the Department of Law with a new authority to pursue contempt prosecutions against the wishes of the court. Instead, the revised law was repeatedly characterized as a measure designed to give *the courts* greater power and flexibility to deal with acts of contempt. [17]

Returning to the facts of the present case: Williams may have willfully failed to honor his grand jury subpoena, but it is clear that the superior court did not believe that a criminal contempt prosecution was warranted. That being so, the State had no authority to require the court to adjudicate the contempt charge.

*Conclusion*

The superior court's dismissal of the contempt charge in this case is AFFIRMED.

---

[17] *See* Minutes of the House Judiciary Committee for August 4, 2006 @ 3:48:00 to 3:52:20 (remarks of Representative Max Gruenberg and remarks of Assistant Attorney General Dean Guaneli).